837 So.2d 512 (2003)
The UNIVERSITY OF FLORIDA, BOARD OF TRUSTEES, Appellant,
v.
Salahattin M. SANAL, M.D., Appellee.
No. 1D02-833.
District Court of Appeal of Florida, First District.
January 29, 2003.
*513 John F. Dickinson and Margaret A. Philips of Constangy, Brooks & Smith, LLC, Jacksonville, for Appellant.
M. Scott Thomas and Gregory A. Lawrence of Thomas & Lawrence, P.A., Jacksonville, for Appellee.
WEBSTER, J.
The University of Florida seeks review of a summary final judgment entered against it on its complaint seeking enforcement of an agreement not to compete included in a contract by which it employed Dr. Sanal. Because we conclude that the trial court correctly determined that the University failed to carry its burden to prove that a "legitimate business interest," as that term is defined in section 542.335(1)(b), Florida Statutes (1999), supported enforcement of the non-compete agreement, we affirm.
On appeal, the parties do not dispute either the operative facts or the applicable law. Rather, the University argues that the trial court misconstrued the controlling statute and, as a result, reached an erroneous conclusion. The standard of review for this pure question of law is de novo. E.g., Dixon v. City of Jacksonville, 774 So.2d 763, 765 (Fla. 1st DCA 2000) ("It is well established that the construction of statutes ... is a question of law that is reviewable de novo").
The University hired Dr. Sanal (who is a physician specializing in hematology and oncology) in August 1999 as a clinical associate professor of medicine in the division of hematology/oncology at the University of Florida Health Science Center/Jacksonville. The written employment contract *514 specified that Dr. Sanal's responsibilities would "include teaching, research, patient care and some administrative duties." It also contained the following non-compete provision:
Upon termination of your employment with the University, whether through your resignation, your retirement from employment with the University, or the non-renewal or termination of this or any succeeding agreement, you (including an organization in which you are a shareholder, partner, employee or agent) agree that for a period of two years from the termination, you will not engage in a community based clinical practice within a radius of fifty miles from any location which has been the situs of your major faculty clinical teaching assignment with [sic] the two years preceding the date of termination.
Dr. Sanal's employment with the University ended on July 20, 2001. On July 23, 2001, Dr. Sanal began working with Jacksonville Oncology Group as a hematologist/oncologist treating disease processes comparable to those he treated while employed by the University. Jacksonville Oncology Group is "a community based clinical practice" located less than 50 miles from the University's Jacksonville facility.
The University filed its complaint seeking preliminary and permanent injunctive relief pursuant to section 542.335, Florida Statutes, alleging that Dr. Sanal was violating the non-compete agreement and causing irreparable injury to its "legitimate business interests," which it identified as "substantial relationships with prospective and existing patients within the geographic area defined by the [a]greement." Dr. Sanal filed an answer in which he denied the foregoing allegations, and asserted, as an affirmative defense, that the non-compete agreement was "not reasonably necessary to protect any legitimate business interest of the [University] and [wa]s, therefore, unenforceable as a matter of law." Subsequently, Dr. Sanal filed a motion for summary judgment, in which he claimed that "[t]he undisputed record before th[e] [c]ourt demonstrate[d] that the subject non-competition covenant [wa]s not supported by any legitimate business interest and [wa]s, therefore, void and unenforceable."
The University was unable to establish that Dr. Sanal had provided care to any of its former patients since joining Jacksonville Oncology Group. It was unable to identify a single patient treated by Dr. Sanal during his employment with it who had followed him for continuing care. It was unable to identify any patient who was unaccounted for, such that it would have reason to believe that the patient had left the University to follow Dr. Sanal. Moreover, the University had not realized any marked decrease in its hematology/oncology patient population since Dr. Sanal had begun working for Jacksonville Oncology Group. In fact, it was undisputed that Dr. Sanal had treated only established patients of Jacksonville Oncology Group or new patients referred to the Group under the name of a senior member of the Group.
Unable to establish that any relationship with any existing patient had been affected, the University argued that it was, nevertheless, entitled to injunctive relief because it "ha[d] a legitimate, protectible business interest in its prospective patient base." However, it presented no evidence to identify any specific prospective patients. Rather, the University's position appears to have been that "its prospective patient base" included all persons residing within a 50-mile radius of its Jacksonville facility, because they might need the services of a hematologist/oncologist in the future.
The trial court concluded that Dr. Sanal was "practicing medicine in violation of the *515 terms of the non-compete agreement." However, it concluded, further, that the University had failed to establish that it had any "legitimate business interest," as that term is defined in section 542.335(1)(b), Florida Statutes, that would be affected unless the relief requested by the University was granted. Rather, it concluded that the University was essentially seeking to eliminate "generic competition in the medical marketplace," a result not permitted by section 542.335. Accordingly, the trial court denied the University's request for temporary injunctive relief, and granted Dr. Sanal's motion for summary judgment. In doing so, however, the trial court stated that its actions were not intended to prevent the University "from filing another action in the event that [Dr. Sanal] either actively or passively solicits business from patients he formerly treated while employed by [the University]." This appeal follows.
The parties agree that the outcome of this appeal is controlled by section 542.335(1)(b)3, Florida Statutes (1999), which, to the extent pertinent, reads:
(1) ... [E]nforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business, is not prohibited. In any action concerning enforcement of a restrictive covenant:
....
(b) The person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant. The term "legitimate business interest" includes, but is not limited to:
....
3. Substantial relationships with specific prospective or existing customers, patients, or clients.
....
Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable.
The parties disagree, however, as to how this language should be read. The University contends that subparagraph 3 should be construed as including within the term "prospective patients" all persons residing within a given geographic area, because they might need medical care in the future. Dr. Sanal, on the other hand, argues that the term "prospective patients" is modified by the adjective "specific"; that the phrase "specific prospective patients" is clear and unambiguous; and that we must, therefore, apply that language accordingly. We agree with Dr. Sanal.
The issue thus limited appears to be one of first impression. We have been unable to find any cases which either address the issue directly or provide meaningful insight. Although the parties have cited cases which they contend support their respective positions, we find them all to be inapposite. The University cites three cases: Gold Coast Media, Inc. v. Meltzer, 751 So.2d 645 (Fla. 3d DCA 1999), involved only whether the language of the non-compete agreement was intended to bring that agreement into play following voluntary termination by the employee as well as following involuntary termination; Infinity Radio, Inc. v. Whitby, 780 So.2d 248 (Fla. 4th DCA 2001), involved only whether the agreement sought to be enforced was one that had been assigned by a previous party or an entirely new agreement; and, in Tusa v. Roffe, 791 So.2d 512 (Fla. 4th DCA 2001), it appears that the holding is merely that protecting relationships with existing customers would constitute a "legitimate business interest" pursuant to section 542.335(1)(b)3, and that the *516 court remanded for further proceedings as to one defendant consistent with that holding. Austin v. Mid State Fire Equipment of Central Florida, Inc., 727 So.2d 1097 (Fla. 5th DCA 1999), and Anich Industries, Inc. v. Raney, 751 So.2d 767 (Fla. 5th DCA 2000), the two cases cited by Dr. Sanal, are, likewise, unhelpful.
We can discern no ambiguity in the language of section 542.335(1)(b)3. It strikes us as relatively clear that the adjective "specific" used to modify "prospective patients" was intended to have its plain or ordinary meaning of "particular." In such a situation, there is nothing to construe. See, e.g., A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 1144, 137 So. 157, 159 (1931) ("The intention and meaning of the Legislature must primarily be determined from the language of the statute itself and not from conjectures aliunde. When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning."). Courts are "without power to construe an unambiguous statute in a way which would extend, modify, or limit its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power." Am. Bankers Life Assurance Co. of Fla. v. Williams, 212 So.2d 777, 778 (Fla. 1st DCA 1968). Moreover, the construction advocated by the University would render meaningless the words "[s]ubstantial relationships" at the beginning of subparagraph 3 because one cannot have "substantial relationships" with "prospective patients" who are unidentified, and unidentifiable. Accordingly, we hold that, to qualify as a "legitimate business interest" pursuant to section 542.335(1)(b)3, a "relationship" with a "prospective patient" must be, in addition to "substantial," one with a particular, identifiable, individual.
We note that such a result appears to be consistent with what the principal senate sponsor and the bar's principal drafter of section 542.335 have said they intended. In an article written for The Florida Bar Journal shortly after the adoption of section 542.335, Senator John Grant and Thomas Steele stated that a plaintiff seeking to enforce a restrictive covenant should be entitled to do so only if "it can demonstrate that the defendant has misappropriated (or threatens to misappropriate) identifiable assets" of the plaintiff's business. John A. Grant, Jr. & Thomas T. Steele, Restrictive Covenants: Florida Returns to the Original "Unfair Competition" Approach for the 21st Century, Fla. B.J., Nov. 1996, at 53, 54 (emphasis added). According to Grant and Steele, the statute was not intended to "unnecessarily impede competition, the ability of competitors to hire experienced workers, or the efforts of employees to secure better-paying positions." Id. at 55.
To be entitled to the injunctive relief it sought, the University was obliged to prove that, absent such a remedy, it would suffer irreparable injury to a "legitimate business interest," as that term is defined in section 542.335(1)(b). Because it failed to establish either that Dr. Sanal had interfered with "[s]ubstantial relationships with specific prospective ... patients" or that he had threatened to do so, the University failed to carry that burden. Accordingly, the trial court correctly entered summary final judgment in Dr. Sanal's favor on the cause of action stated in the University's complaint.
AFFIRMED.
VAN NORTWICK and PADOVANO, JJ., concur.