853 So.2d 526 (2003)
Edward SUPINSKI, M.D., Appellant,
v.
OMNI HEALTHCARE, P.A., Appellee.
Nos. 5D03-563, 5D03-720.
District Court of Appeal of Florida, Fifth District.
August 29, 2003.
*527 Douglas B. Brown and R. Travis Rentz, of Rumberger, Kirk & Caldwell, Orlando, for Appellant.
Jack A. Kirschenbaum, Alec D. Russell of Gray, Harris & Robinson, P.A., Melbourne, for Appellee.
MONACO, J.
Edward Supinski, M.D. ("Dr.Supinski)", appeals the entry of a temporary injunction issued in response to alleged breaches by him of a noncompetition restrictive covenant contained in his employment agreement with the appellee, Omni Healthcare, P.A. ("Omni"). We have jurisdiction of this nonfinal appeal in accordance with Article V, section (b)(1), Florida Constitution, and Rule 9.130(a)(3)(B), Florida Rules of Appellate Procedure. As we conclude that the temporary injunction met the necessary legal requirements, we affirm, but remand for further consideration of the bond amount.
The facts, in truncated form, reflect that Dr. Supinski was recruited by Omni in the year 2000 to move to Florida from Pennsylvania to work in one of Omni's facilities in Brevard County. Omni is a physician owned multi-specialty medical practice that operates three medical offices exclusively in central and southern Brevard County, and mainly in the Melbourne area. The parties negotiated an employment agreement effective August 1, 2000, for an initial term of 24 months. It was to terminate on July 31, 2002, unless automatically extended pursuant to its terms. More particularly, the agreement provided that it would automatically renew unless either party provided written notice of nonrenewal at least 180 days prior to the termination date.
The employment agreement contained a noncompetition restrictive covenant that was enforceable by injunction. In essence, the parties agreed that for a period of two years after the conclusion of his employment, Dr. Supinski would not compete against Omni within a ten mile radius of any of its offices in Brevard County, nor would he solicit Omni's patients or employees. Dr. Supinski also agreed not to misappropriate Omni's trade secrets or confidential information for a period of five years. He acknowledged that the restrictive covenant was reasonable and necessary for Omni's protection and that he *528 could earn a living outside the boundaries of the restricted territory.
Dr. Supinski began his employment in accordance with the contract. There is evidence that Omni assisted Dr. Supinski in becoming credentialed by various managed care organizations, helped him gain staff privileges at hospitals, hired his staff, advertised his practice, and aided him in establishing a patient base. On May 10, 2002, well short of the 180 day requirement, Dr. Supinski sent a letter to Omni asserting that he was not renewing his employment agreement, and that he would leave its employment on July 31, 2002.
As soon as his resignation was effective, Dr. Supinski opened his new practice approximately 4 miles from the care center at which he had previously been employed. Three days later Omni filed suit, asserting that Dr. Supinski had breached his employment agreement in a number of ways, including the failure to give the minimum notice of nonrenewal and the violation of the noncompetition provisions. Omni sought liquidated damages and temporary and permanent injunctive relief pursuant to the terms of the agreement and section 542.335, Florida Statutes (1999).
During the course of pleadings and discovery, Dr. Supinski denied that his resignation was untimely, and alleged that Omni had earlier breached the contract in a number of ways, the details of which are unimportant for purposes of this appeal. He admitted, however, that he had established his new office within 10 miles of an Omni care center, and that 40% of the patients at his new office were patients he treated while employed by Omni.
An evidentiary hearing was held to consider entry of a temporary injunction. Upon consideration of the evidence, the trial court concluded that the restrictive covenant was supported by legitimate business interests associated with a specific geographic location and a specific marketing area; that the terms of the restriction were reasonable; that Dr. Supinski materially breached the covenant by opening his practice within the proscribed area; that Omni would suffer irreparable harm unless an injunction were issued; and that the agreement did not violate public policy. The court granted the temporary injunction, and set bond at $50,000.
Several months later Dr. Supinski moved for an emergency modification of the temporary injunction. The motion contained many of the arguments previously considered by the trial court; asserted that the injunction was overbroad because it precluded him from opening an office within 10 miles of any Omni office, and covered all patients, not just those he had treated while at Omni; and argued that the bond amount was not supported by evidence. Dr. Supinski alleged that there was a "change in circumstances" to support the modification; namely a decision by the First District Court of Appeal in the case of University of Florida, Bd. of Trustees v. Sanal, 837 So.2d 512 (Fla. 1st DCA 2003). Omni responded that there were no changed circumstances, and that the bond amount had been stipulated to by the attorney who had previously represented Dr. Supinski at the earlier injunction hearing. Omni's counsel indicated in this regard that the hearing had been running late and that the court reporter was unable to stay. Both sides agreed to waive the presence of a court reporter for the legal argument that was to follow. Omni's counsel indicated further that the stipulation occurred during the time the reporter was not present.
The trial court declined to modify the injunction. As to the bond amount, the court said that he would not modify it based on the representations made by Omni's counsel, and his own recollection *529 that he did not pull the bond number "from thin air." Counsel for Dr. Supinski asserted that he was surprised by the claim of a stipulation, and that he would have had the prior attorney present to testify if he had known. Counsel for Omni offered to have the prior attorney appear immediately by telephone to confirm that there was a stipulation on the amount of the bond. Apparently, however, the prior lawyer was not called. The trial court concluded the hearing, saying that Dr. Supinski had not met his burden for modification or vacation of the injunction. Dr. Supinski then appealed both the rendition of the temporary injunction, and the denial of his motion to modify.
The parties appear to agree that section 542.335(1), Florida Statutes (1999), is applicable to this case.[1] So long as the *530 covenant not to compete fits within the parameters of section 542.335, it may be enforced by the injunctive power of the courts. The grant or denial of a temporary injunction comes to an appellate court clothed with the presumption of correctness, and may be reversed only upon a showing of a clear abuse of discretion. See Knox v. District School Bd. of Brevard, 821 So.2d 311, 314 (Fla. 5th DCA 2002); Rollins, Inc. v. Parker, 755 So.2d 839, 841 (Fla. 5th DCA 2000); Anich Industries, Inc. v. Raney, 751 So.2d 767 (Fla. 5th DCA 2000).
It is well-settled that a party seeking a temporary injunction must demonstrate that: (1) there is a likelihood of irreparable harm and the unavailability of an adequate remedy at law; (2) the petitioner has a substantial likelihood of success on the merits; (3) the threatened injury to the petitioner outweighs any possible harm to the respondent; and (4) the granting of a temporary injunction will not disserve the public interest. See Anich; Estate of Barsanti, 773 So.2d 1206 (Fla. 3d DCA 2000); Florida High School Activities Ass'n v. Kartenovich, 749 So.2d 1290 (Fla. 3d DCA 2000). In the present case the trial court made findings of fact confirming that Omni satisfied each of these requirements.
Dr. Supinski urges initially, however, that the injunction is overbroad, and should be limited to preventing him from offering medical services only to those patients he actually treated while an employee of Omni. In support of this position Dr. Supinski cites University of Florida v. Sanal, 837 So.2d 512 (Fla. 1st DCA 2003).
In Sanal the University of Florida sought review of a summary final judgment entered against it on its complaint seeking enforcement of a noncompete provision contained in a contract of employment it had entered into with a physician. The contract provided that:
... you will not engage in a community based clinical practice within a radius of 50 miles from any location which has been the situs of your major faculty clinical teaching assignment within the 2 years preceding the date of termination.
After his employment ended Dr. Sanal began working with a Jacksonville oncology group which had a community based clinical practice located less than 50 miles from the University's facility in Jacksonville. The University filed a complaint and one of Dr. Sanal's affirmative defenses was that the non-compete agreement was "not reasonably necessary to protect any legitimate business interest of the University and was, therefore, unenforceable as a matter of law."
In agreeing with the trial court's decision not to enforce the covenant, the Sanal court noted that the University was unable to establish that Dr. Sanal had provided care to any of its former patients and was, in fact, unable to identify a single patient treated by Dr. Sanal during his employment with it who had followed him for continuing care. Moreover, the University had not realized any marked decrease in its hemotology/oncology patient population since Dr. Sanal started working for a competitor group. Dr. Sanal had treated only established patients of the Jacksonville oncology group and there was no evidence that a relationship with any existing patient had been affected. Nonetheless, the University argued that it was entitled to injunctive relief because it had a legitimate business interest in its "prospective patient base." According to the University, its prospective patient base included all persons residing within a 50 mile radius of its *531 Jacksonville facility because they "might need the services of a hemotologist/oncologist in the future."
The lower court denied the University's request for temporary injunctive relief and granted Dr. Sanal's motion for summary judgment. The court specifically indicated that it was not precluding the University from filing another action in the event that the doctor either actively or passively solicited business from patients he formerly treated while employed at the University. The First District Court of Appeal affirmed, holding that the University failed to establish that it would suffer irreparable injury to a "legitimate business interest," as that term is defined in section 542.335(1)(b), Florida Statutes (1999).
Dr. Supinski can draw little solace from Sanal. The lower court found, based on substantial competent evidence in the record and in accordance with section 542.335, that Omni had legitimate business interests to protect and that the issuance of a temporary injunction was necessary to protect those interests. Dr. Supinski has admitted that 40% of his clientele were persons he treated while at Omni, and that his new office was well within the proscribed area. Omni established to the satisfaction of the trial judge that Dr. Supinski interfered with "substantial relationships with prospective ... patients" within the meaning of the statute, and we do not perceive any abuse of discretion by the trial court in this regard.
Dr. Supinski also suggests that the trial court erred in enforcing the spatial aspects of the injunction so that he is prohibited from opening an office within 10 miles of each of its several facilities. He argues that he should only be prohibited from competing within 10 miles of the office he actually worked in. This argument might have some merit if the various offices were widespread. The fact is, however, that the various Omni facilities are all located primarily in a confined area of southern Brevard County, and that Dr. Supinski is free to work in the north part of the county or in any other county. That the distance is measured from more than one office is, thus, largely irrelevant. If the geographic restriction had been defined as encompassing all of Brevard County, we suspect there would have been no reason for Dr. Supinski to complain. As the restriction covers far less, the force of his argument wanes.
This case is unlike Open Magnetic Imaging, Inc. v. Nieves-Garcia, 826 So.2d 415 (Fla. 3d DCA 2002), where the restricted party worked in one county, yet was barred from practicing in three. The lower court found that the provision was too restrictive, and declined to enforce it on such a widespread basis. The Third District affirmed on this point, finding that the trial court's assessment regarding the overbroad nature of the restriction was correct, but remanded for the trial court to modify and narrow the breadth of the covenant in accordance with the requirements of the statute. In the present case, however, we find no abuse of discretion in the enforcement of the geographic restriction as written.
Dr. Supinski next argues that because Omni breached the employment agreement, he was entitled to terminate the agreement without the onus of the restrictive covenant barring his options. More specifically, he argues that the trial court misinterpreted the contract with respect to his compensation. As a subset of this position, Dr. Supinski argues that according to Omni's calculations, although he was entitled to be paid as a part of his compensation $108,823.50 for net adjusted collections during the second year of his employment, he was actually paid $1,000.00 less than that. Omni responded *532 by asserting that the withhold was necessary because Dr. Supinski failed to purchase "tail insurance," as he was required to do under the contract, and that Omni would have to do so on its own. The trial judge disagreed with Dr. Supinski, and we do as well.
One applying for a temporary injunction to enforce a noncompete agreement must show, among other things, a likelihood of success on the merits. See Cordis Corp. v. Prooslin, 482 So.2d 486, 489 (Fla. 3d DCA 1986). The person against whom the injunction is sought may offer as a defense that the moving party has materially breached the contract. If the employee introduces evidence of the employer's breach, as the employee is entitled to do pursuant to section 542.335(g)3, Florida Statutes (1999), the employer must then demonstrate that it is likely to succeed on the merits of the proffered defense, as well. See Bradley v. Health Coalition, Inc., 687 So.2d 329, 333 (Fla. 3d DCA 1997).
The trial court found that Dr. Supinski "failed to produce sufficient evidence to establish a breach of contract or wrongful act" by Omni, and determined that Omni "has established a significant likelihood that it will prevail on the merits after trial." After carefully reviewing the record, we find no abuse of discretion in these findings and substantial competent evidence to support them. Moreover, given the small differential in the claimed net adjusted collections versus the paid adjusted collections, the materiality of the breach, if any, is questionable.
Finally, Dr. Supinski argues that the lower court erred in setting the amount of the injunction bond. He alleges that the court heard no evidence justifying the amount of the bond, and that the bond was, therefore, arbitrary. Omni argues that prior counsel for Dr. Supinski stipulated to the $50,000 bond amount at a time when the court reporter had been discharged. According to Dr. Supinski, however, the court reporter was discharged only for purposes of recording the final arguments of the attorneys, and for no other purpose. The trial judge apparently has no strong recollection of the events that led to the bond amount being inserted, and Dr. Supinski's former attorney was not present at the hearing to confirm or deny the existence of a stipulation.
Before setting the amount of an injunction bond a trial court must have some basis for the exercise of its discretion. See AOT, Inc. v. Hampshire Mgmt. Co., 653 So.2d 476 (Fla. 3d DCA 1995); Resorts Mgmt., Inc. v. Olsen, 651 So.2d 194 (Fla. 2d DCA 1995). Given the confusion in the setting of this bond amount, the fairest thing to do under these peculiar circumstances is to affirm the issuance of the temporary injunction, but remand the case to the lower court with directions to conduct an evidentiary hearing concerning whether the bond amount was the subject of a stipulation of the parties. If there was a stipulation, then the bond should remain as set. If not, then the court is directed to hold an evidentiary hearing addressing the proper amount of the injunction bond. Pending those determinations, however, the injunction as issued shall remain in place.[2]
AFFIRMED and REMANDED.
SAWAYA, C.J., and ORFINGER, J., concur.
NOTES
[1] Section 542.335(1), Fla. Stat. (1999), reads in pertinent part:

(1) ... [E]nforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business, is not prohibited. In any action concerning enforcement of a restrictive covenant:
...
(b) The person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant. The term "legitimate business interest" includes, but is not limited to:
1. Trade secrets, as defined in s. 688.002(4).
2. Valuable confidential business or professional information that otherwise does not qualify as trade secrets.
3. Substantial relationships with specific prospective or existing ... patients....
4.... [Patient], or client goodwill associated with:
a. An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress";
b. A specific geographic location; or
c. A specific marketing or trade area.
5. Extraordinary or specialized training.
Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable.
(c) A person seeking enforcement of a restrictive covenant also shall plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction. If a person seeking enforcement of the restrictive covenant establishes prima facie that the restraint is reasonably necessary, the person opposing enforcement has the burden of establishing that the contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest or interests. If a contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest or interests, a court shall modify the restraint and grant only the relief reasonably necessary to protect such interest or interests.
...
(g) In determining the enforceability of a restrictive covenant, a court:
1. Shall not consider any individualized economic or other hardship that might be caused to the person against whom enforcement is sought....
3. Shall consider all other pertinent legal and equitable defenses.
4. Shall consider the effect of enforcement upon the public health, safety, and welfare.
(h) A court shall construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement. A court shall not employ any rule of contract construction that requires the court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract.
...
(j) A court shall enforce a restrictive covenant by any appropriate and effective remedy, including, but not limited to, temporary and permanent injunctions. The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant. No temporary injunction shall be entered unless the person seeking enforcement of a restrictive covenant gives a proper bond, and the court shall not enforce any contractual provision waiving the requirement of an injunction bond or limiting the amount of such bond.
[2] We note that the "Supplemental Appendix" filed on behalf of Dr. Supinski contains nothing but documents that came into existence after these appeals were filed. In addition, a number of documents in the original Appendix came into existence after the orders being appealed. These documents were clearly not before the trial court when it made its determinations and rendered the orders being reviewed. It is elemental that appellate courts will not consider evidence that was not presented to the trial court for its consideration in making its decisions. Our function is to determine whether the trial court committed error on the basis of the evidence and issues before it. See, e.g., Hillsborough County Bd. of County Cmm'rs. v. Public Employees Relation Comm'n., 424 So.2d 132, 134 (Fla. 1st DCA 1982). Omni has moved to strike Dr. Supinski's briefs and appendices because of this transgression. Rather than do so and consequently prolong these proceedings, we have noted the motion and have ignored any document filed after the rendition of the orders being appealed, as well as any comments in Dr. Supinski's briefs referencing them.