891 So.2d 591 (2004)
SOUTHERNMOST FOOT AND ANKLE SPECIALISTS, P.A., Appellant,
v.
John F. TORREGROSA, D.P.M., Appellee.
No. 3D04-1096.
District Court of Appeal of Florida, Third District.
December 22, 2004.
Rehearing Denied January 28, 2005.
*592 Lauri Waldman Ross, Miami; McLuskey & McDonald and John W. McLuskey, Miami, for appellant.
Jay M. Levy, Miami, for appellee.
Before GODERICH, SHEVIN, and RAMIREZ, JJ.
GODERICH, Judge.
The plaintiff, Southernmost Foot and Ankle Specialists, P.A. [Southernmost], appeals from a final judgment granting declaratory relief. We affirm, in part; reverse, in part; and remand for entry of a corrected final judgment.
Southernmost is a medical podiatry practice that maintains offices in Key West, Big Pine Key, Marathon, Key Largo/Tavernier, Homestead, and Kendall. In May 2001, John F. Torregrosa, D.P.M., executed a written contract of employment with Southernmost that contained three restrictive covenants: 1) a covenant not to compete for a period of two years after his termination of employment within all of Monroe County and within a five-mile radius of any Southernmost office in Miami-Dade County, 2) a covenant prohibiting either the solicitation of or communication with Southernmost's patients for a period of two years following his termination of employment, and 3) a covenant not to use or disclose confidential trade information or trade secrets.
While employed with Southernmost, Dr. Torregrosa worked exclusively at its Key *593 Largo/Tavernier[1] and Marathon offices. Dr. Torregrosa obtained hospital privileges at Fishermen's Hospital in Marathon, at Mariner's Hospital in Key Largo, and at Homestead Hospital. On July 31, 2003, when Dr. Torregrosa left employment with Southernmost, he indicated by letter his desire to practice podiatric medicine in Key Largo and Monroe County. In response, Southernmost offered to sell Dr. Torregrosa its Key Largo office. When negotiations for the sale of the Key Largo office failed, Southernmost filed a multi-count complaint against Dr. Torregrosa alleging breach of the three restrictive covenants contained in the employment agreement and seeking declaratory relief. Southernmost contended that Dr. Torregrosa was attempting to open a competing podiatry practice and that he was using Southernmost's confidential and proprietary information to do so. Dr. Torregrosa denied the material allegations of the complaint and raised several affirmative defenses, including that Southernmost had materially breached the employment contract, that the restrictive covenants were void because they did not protect a legitimate business interest, and that enforcement of these restrictive covenants was not in the public interest.
The parties agreed to sever the count seeking declaratory relief, and on January 27 and February 18, 2004, the trial court conducted an expedited bench trial. At the conclusion of the trial, the trial court announced its findings that Southernmost had legitimate business interests with regard to its patient base, referral doctors, specific prospective and existing patients, and patient goodwill. The trial court determined that the time and distance limitations of the restrictive covenants were excessive and overbroad. The trial court reduced the duration of the restraint from two years to one year and reduced the geographic limitation from all of Monroe County to "outside of the five miles of the Key Largo/Tavernier line and all the way down to five miles outside of Marathon." The court stated that "below Marathon and above Key Largo, [Dr. Torregrosa] never worked for Southernmost and he should be allowed to practice as he wishes." The trial court recognized that if a Southernmost patient contacted Dr. Torregrosa for treatment, he was entitled to see the patient. The trial court found no evidence that Southernmost had any trade secrets.
Before a written judgment was entered, Dr. Torregrosa filed a motion for clarification indicating that it was unclear from the oral pronouncements whether he could perform surgery and see patients at Mariner's and Fisherman's Hospitals, whether he could open an office at mile marker 100 in Key Largo which is approximately ten miles north of Southernmost's Tavernier office, and whether he could open an office in Islamorada which was more than five miles south of Southernmost's Tavernier office and thirty miles north of Southernmost's Marathon office. Because the trial court had not defined Tavernier, Marathon, and Key Largo from a geographic standpoint, Dr. Torregrosa maintained it was not clear as to where he could open an office. In response to the motion for clarification, each party was instructed to and did file a proposed final judgment.
The trial court then entered its final judgment. The final judgment was consistent with the trial court's oral pronouncements except with regard to geographic area. The trial court determined that because Dr. Torregrosa had worked at Southernmost's offices in Marathon and Key Largo/Tavernier, he should not be *594 allowed to open an office within a five-mile radius of Southernmost's present offices in Tavernier and Marathon. The court also allowed Dr. Torregrosa to perform surgery and otherwise comply with the requirements for staff privileges at Mariner's and Fisherman's Hospitals noting that Dr. Torregrosa is the only podiatrist on staff at Mariner's Hospital and that the public interest in allowing Mariner's Hospital to continue as a full service hospital by maintaining podiatric care outweighs Southernmost's interest in enforcing its covenant. Southernmost's motion for rehearing was denied. Southernmost's appeal follows.
Southernmost contends that the trial court abused its discretion by entering a final judgment that did not enforce the full two-year term of the restrictive covenant, that provided for geographic limitations that were narrower than those contained in the trial court's oral pronouncements, and that concluded it was in the public interest for Dr. Torregrosa to remain on staff at Mariner's and Fisherman's Hospitals.
Section 542.335(1)(c) provides, in part, that
If a person seeking enforcement of the restrictive covenant establishes prima facie that the restraint is reasonably necessary, the person opposing enforcement has the burden of establishing that the contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest or interests. If a contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest or interests, a court shall modify the restraint and grant only the relief reasonably necessary to protect such interest or interests.
In the instant case, Southernmost's principals testified in detail about how they developed their medical podiatry practice in the Keys over a period of twenty years. They also testified about how they hired Dr. Torregrosa when he had just finished his hospital training and how they put him into business. The trial court properly found that this testimony established a prima facie case that the restrictive covenant was reasonably necessary to protect Southernmost's legitimate business interests in its patient base, referral doctors, specific prospective and existing patients, and patient goodwill. With the burden having shifted, Dr. Torregrosa then testified and attempted to minimize what Southernmost had done for him in terms of putting him into business. After hearing the testimony in its entirety, the trial court concluded that the restrictive covenant was "too long" in duration and too broad geographically, and modified it.
Southernmost contends that the trial court abused its discretion by modifying the duration of the restrictive covenant from two years to one year without giving a rationale for the modification. We agree.
Because the restraint in question is neither 6 months or less, nor more than 2 years in duration, it is neither presumed reasonable nor unreasonable. § 542.335(1)(d)1., Fla. Stat. (2003). Hence this provision cannot have provided the basis for the modification. Further, section 542.335(1)(h), Florida Statutes (2003), directs that "[a] court shall construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement." A review of the record shows there is a lack of evidence to support a modification as to duration of the restraint, and that the trial court should have construed the restraint *595 in favor of providing Southernmost with reasonable protection of its legitimate business interests. Accordingly, we direct the trial court to reinstate the two-year term of the restrictive covenant.
With regard to geographic breadth, the trial court in its oral pronouncements reduced the area of the restrictive covenant from all of Monroe County to "outside of the five miles of the Key Largo/Tavernier line and all the way down to five miles outside of Marathon." When reducing the geographic limitation, the trial court reasoned that because Dr. Torregrosa had worked at the Tavernier and Marathon offices, he should not be allowed to open an office there. The trial court further explained that because Dr. Torregrosa had never worked for Southernmost "below Marathon and above Key Largo, . . . he should be allowed to practice as he wishes." The trial court acted within its discretion when it made this modification as the evidence and the rationale supported the modification. See Open Magnetic Imaging, Inc. v. Nieves-Garcia, 826 So.2d 415 (Fla. 3d DCA 2002)(affirming trial court's determination that non-compete provision was overbroad where employee had worked solely in Dade County but was barred from practicing Dade, Broward, and Palm Beach Counties).
Thereafter, in its final judgment, after considering Dr. Torregrosa's motion for clarification, the trial court further reduced the geographic area to "within a five-mile radius of Southernmost's present offices in Tavernier and Marathon." Again, the trial court gave no basis for this further reduction in the restraint area. Further, because section 542.335(1)(h), Florida Statutes (2003), directs that "[a] court shall construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by a the person seeking enforcement," we direct the trial court to reinstate its oral pronouncements with regard to geographic area.
Lastly, Southernmost contends that the trial court lacked evidence to support its finding that the public interest in allowing Dr. Torregrosa to maintain his staff privileges at both Mariner's and Fisherman's Hospitals outweighed Southernmost's interest in enforcing its restrictive covenant. We disagree.
Dr. Torregrosa presented the only evidence regarding public interest when he testified that he is the only podiatrist on staff at Mariner's Hospital and one of the three at Fisherman's Hospital. Southernmost contends that the trial court improperly precluded it from presenting evidence about how it intended to fulfill the need at those hospitals after Dr. Torregrosa's resignation. Southernmost also proffered that it should have been able to introduce through deposition testimony that Mariner's Hospital had no interest in the outcome of these proceedings. The testimony that Southernmost proposed should have been considered is irrelevant to the issue of whether it is in the public interest for Dr. Torregrosa to maintain his staff privileges at Mariner's and Fisherman's Hospital so that the residents of the Upper Keys can have access to full-service hospital. Therefore, the trial court properly excluded this evidence, and its findings with regard to Dr. Torregrosa's ability to maintain staff privileges at the hospitals in question are affirmed.
Affirmed, in part; reversed, in part; and remanded for entry of a corrected final judgment in accordance with this opinion.
NOTES
[1] The Key Largo office later moved to Tavernier.