DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**INFINITY HOME CARE, L.L.C.**, and **SYLVIE FORJET,**
Appellants,

v.

**AMEDISYS HOLDING, LLC,**
Appellee.

No. 4D14-3872

[ November 18, 2015 ]

Appeal of non-final orders from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jeffrey E. Streitfeld, Judge; L.T. Case No. CACE 14-014314 (07).

Christopher V. Carlyle and David A. Monaco of The Carlyle Appellate Law Firm, The Villages, for Appellant-Infinity Home Care, L.L.C.

Cristina E. Groschel and Michael I. Kean of Berman, Kean & Riguera, P.A., Fort Lauderdale, for Appellant-Sylvie Forjet.

Courtney B. Wilson of Littler Mendelson, P.C., Miami, for appellee.

**On Appellant's Motion for Rehearing and Motion for Rehearing En Banc**

TAYLOR, J.

We decline to reconsider the merits of our decision, but grant rehearing in part to correct a statement in the original opinion.

In this appeal of a temporary injunction to enforce non-compete and non-solicitation provisions of an employment contract, the main issue is whether referral sources for home health services are a legitimate business interest entitled to protection under section 542.335, Florida Statutes (2012). Infinity Home Care, LLC, joined by its current employee, Sylvie Forjet, appeals the temporary injunction, relying on the Fifth District's opinion in *Florida Hematology & Oncology v. Tummala*, 927 So. 2d 135 (Fla. 5th DCA 2006). *Tummala* held that referring physicians are not a legitimate business interest under section 542.335 because the statute

requires that prospective patients be specific and identifiable. We decline to follow *Tummala* in this case for the reasons discussed below and affirm issuance of the temporary injunction.

Amedisys Holding, LLC, provides home health care services such as in-home nursing and hospice care. For eighteen months between January 2013 and June 2014, Forjet was employed by Amedisys as a Care Transition Coordinator (CTC) in Broward County. As a CTC, Forjet was primarily responsible for developing and maintaining Amedisys's relationships with individual case managers at certain health care facilities that referred their patients to Amedisys for home health services.[1] When Forjet was hired, Amedisys required her to sign a Protective Covenants Agreement which contained a non-compete provision and non-solicitation agreement:

> Competition with Company. Employee covenants and agrees that during his/her employment, and for a period of one (1) year after Employee's employment with the Company is terminated or ends for any reason (the "Non-Competition Period"), Employee will not, as an employee, consultant, independent contractor, officer, shareholder, director, partner, owner, or in any other capacity, provide, manage, or supervise services within the "Restricted Area," as such term is hereafter defined, that are the same as or similar in purpose or function to those services Employee has provided to the Company during the "Look Back Period," as hereafter defined, if such services are being provided for the benefit of any business, firm, proprietorship, corporation, partnership, association, entity or venture engaged in any part of the business ("Competing Business") (hereinafter, the "Non-Compete Obligation"). . . .

> The "Restricted Area" is Broward County.

> Solicitation of Business. During Employee's employment, and for a period one (1) year after Employee ceases to be employed by the Company for any reason, Employee will not knowingly contact, solicit, or communicate with a client, customer, patient or Referral Source of the Company for the purpose of

---

[1] Forjet's other duties included meeting with patients to develop case plans and following the patients through plan completion.

encouraging, causing or inducing the client, customer, patient or Referral Source to cease or reduce doing business with the Company or to divert Business-related opportunities (home health or hospice care) to some person or entity engaged in any part of the Business (other than the Company), nor will Employee aid or assist any other person, business, or legal entity to do any of the aforesaid prohibited acts. The restriction created by this paragraph (the "Non-Solicitation Restriction") is limited to clients, customers, patients and Referral Sources that Employee had material contact or business dealings with during the Look Back Period.

In June 2014, Forjet left Amedisys to work for Infinity, a provider of home health care services that competes directly with Amedisys. She immediately began soliciting referral sources that had previously referred business to Amedisys. The referral source of concern in this case is the Cleveland Clinic.

Amedisys filed suit against Infinity and Forjet for temporary and permanent injunctions. Essentially, Amedisys alleged that Forjet violated the restrictive covenants in her employment agreement by soliciting Amedisys's referral sources while working for Infinity. Count I of the complaint is a breach of employment contract claim against Forjet, and Count II is a tortious interference claim against Infinity. Infinity moved to dismiss the complaint, arguing that referral sources are not a protectable legitimate business interest under section 542.335, Florida Statutes, and the holding in *Florida Hematology & Oncology v. Tummala*, 927 So. 2d 135 (Fla. 5th DCA 2006).

The trial court held an evidentiary hearing on Infinity's motion to dismiss. Forjet, a registered nurse who has worked in the home health care industry in Broward County since 1992, developed the Cleveland Clinic as a referral source in 2006 while employed with another competitor, Gentiva. One of the reasons Amedisys hired her was because of her substantial relationship with the Cleveland Clinic. When Amedisys hired her in late 2012, however, it specifically required her to honor her non-compete agreement with Gentiva and not solicit referrals from any of the case managers at the Cleveland Clinic until her agreement expired. After her Gentiva agreement expired, Forjet began soliciting referrals from the case managers at the Cleveland Clinic on behalf of Amedisys. Amedisys considered these referral sources a vital source of business and spent a substantial amount of time and money developing and maintaining them. Forjet testified that she made regular sales calls and provided modest entertainment (such as lunches, small gifts, and dinner)

3

for the referral sources.

When she resigned from Amedisys, Forjet began soliciting referral sources that had previously referred business to Amedisys, including the same case managers at the Cleveland Clinic. Amedisys's vice president of business development testified that after Forjet left, Amedisys's referrals from the Cleveland Clinic sharply declined. She could not, however, quantify the decline in referrals from Cleveland Clinic or show that the business it lost went to Infinity.

Forjet testified that she believed the restrictive covenants in her agreement with Amedisys prevented her from using only referral sources she first developed while working at Amedisys, not sources she had used for years. She testified that she did not develop any new referral sources while working for Amedisys, and that all of her referral sources existed before she was hired. However, Forjet conceded that there was a turnover in case managers at the Cleveland Clinic during her employment with Amedisys, and she thus had to develop relationships with the new case managers that referred patients to Amedisys.

After the hearing, the trial court granted Amedisys a temporary injunction for one year. The court found that Forjet was violating the restrictive covenants and that the restrictive covenants were enforceable to protect Amedisys's relationships with specific referral sources in Broward County. In concluding that referral sources are a legitimate business interest under section 542.335, Florida Statutes, the trial court relied on *Southernmost Foot & Ankle Specialists, P.A. v. Torregrosa*, 891 So. 2d 591, 593 (Fla. 3d DCA 2004). The court declined to follow *Tummala*.

Amedisys sought to establish two legitimate business interests: (1) confidential business information, and (2) referral sources. Although the court found that Amedisys established the existence of valuable confidential business information, it did not find that Forjet had used this information such that an injunction was necessary to protect it. The court, however, found that Amedisys did establish the existence of substantial relationships with referral sources that entitled it to a temporary injunction.

The issue we address in this appeal is whether "referral sources" for home health services are a protectable "legitimate business interest" under section 542.335, Florida Statutes. In *Torregrosa*, the Third District accepted the trial court's finding that "referral doctors" are a legitimate business interest of the plaintiff's podiatry practice, subject to protection under a non-compete agreement. 891 So. 2d at 594. By contrast, the Fifth

District held in *Tummala* that referral doctors are not a legitimate business interest under the statute. 927 So. 2d at 139. Infinity urges us to follow *Tummala,* arguing that it is more on point and provides an analysis of the statute's applicability to referral sources.

Section 542.335, Florida Statutes, governs enforcement of non-compete agreements and other restrictive covenants. It requires that a restrictive covenant be justified by a "legitimate business interest" for enforcement. § 542.335(1)(b), Fla. Stat. (2012). Section 542.335 provides a list of "legitimate business interests," but it specifically states that the list is not exclusive. Among the legitimate business interests listed are "[s]ubstantial relationships with specific prospective or existing customers, patients, or clients." § 542.335(1)(b)3., Fla. Stat. (2012).[2]

In *University of Florida, Board of Trustees v. Sanal*, 837 So. 2d 512 (Fla. 1st DCA 2003), the First District construed the "specific prospective

---

[2] Section 542.335 (1)(b), Florida Statutes, provides as follows:

(b) The person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant. The term "legitimate business interest" includes, but is not limited to:

1. Trade secrets, as defined in s. 688.002(4).

2. Valuable confidential business or professional information that otherwise does not qualify as trade secrets.

3. Substantial relationships with specific prospective or existing customers, patients, or clients.

4. Customer, patient, or client goodwill associated with:

a. An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress";

b. A specific geographic location; or

c. A specific marketing or trade area.

5. Extraordinary or specialized training.

Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable.

patients" language in the statute in affirming the trial court's determination that the university could not enforce its non-compete agreement with a former physician-employee. The university had sought to prohibit the physician from treating all persons residing in the designated geographic area after his employment with the university ended. The court, however, looked to the "clear and unambiguous" language of the phrase "specific prospective patients" in concluding that the statute limited the restrictive covenant to specific patients – not prospective patients. Finding no "legitimate business interest" in unidentified prospective patients, the First District reasoned:

> We can discern no ambiguity in the language of section 542.335(1)(b)3. It strikes us as relatively clear that the adjective "specific" used to modify "prospective patients" was intended to have its plain or ordinary meaning of "particular." In such a situation, there is nothing to construe. *See, e.g., A.R. Douglass, Inc. v. McRainey*, 102 Fla. 1141, 1144, 137 So. 157, 159 (1931) ("The intention and meaning of the Legislature must primarily be determined from the language of the statute itself and not from conjectures aliunde. When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning."). Courts are "without power to construe an unambiguous statute in a way which would extend, modify, or limit its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power." *Am. Bankers Life Assurance Co. of Fla. v. Williams*, 212 So. 2d 777, 778 (Fla. 1st DCA 1968). Moreover, the construction advocated by the University would render meaningless the words "[s]ubstantial relationships" at the beginning of subparagraph 3 because one cannot have "substantial relationships" with "prospective patients" who are unidentified, and unidentifiable. Accordingly, we hold that, to qualify as a "legitimate business interest" pursuant to section 542.335(1)(b)3, a "relationship" with a "prospective patient" must be, in addition to "substantial," one with a particular, identifiable, individual.

*Sanal*, 837 So. 2d at 516.

In *Tummala*, the Fifth District extended the analysis in *Sanal* when it ruled that referral sources are not legitimate business interests under

6

section 542.335.  The court concluded that recognizing referral sources for prospective unidentified patients as a "legitimate business interest" would be inconsistent with the statute, because the statute requires a "substantial relationship" with a "specific" prospective patient.  The court explained:

> What referring physicians supply is a stream of unidentified prospective patients with whom Appellants had no prior relationship.  Therefore, to accept referring physicians as a statutory "legitimate business interest," would completely circumvent the clear statutory directive that "prospective patients" are not to be recognized as such.  The trial court correctly found that: "[A]s stated in *Sanal*, to qualify as a 'legitimate business interest,' a 'relationship' with a 'prospective patient' must be substantial and one with a specific, identifiable individual and the lack of such a relationship with a patient does not become a legitimate business interest simply by virtue of being referred by a physician."  *Sanal*, 837 So. 2d at 515–16.  We see no way to recognize referring physicians as a legitimate business interest and still give effect to the plain language of the statute.

*Tummala*, 927 So. 2d at 139 (footnote omitted) (quoting *Univ. of Fla., Bd. of Trs. v. Sanal*, 837 So. 2d 512, 515-16 (Fla. 1st DCA 2003)).  In footnote 4, the Fifth District acknowledged that its holding conflicted with the Third District's decision in *Torregrosa*, which approved the trial court's finding that referral doctors are a legitimate business interest.[3]

    The Fifth District opined that referral sources *should* be recognized as a "legitimate business interest," stating:

> [T]he evidence was clear that appellants (and most other medical specialists) receive the significant share of their new patients from referring physicians.  They expend effort, money and energy to cultivate referral relationships. . . . Because referring physicians are the major source of new business for a specialist's medical practice, they are perhaps Appellants'

---

[3] The Florida Supreme Court initially accepted review and heard argument, but then decided review was improvidently granted.  *Fla. Hematology & Oncology Specialists v. Tummala*, 969 So. 2d 316 (Fla. 2007).  Justice Lewis dissented with an opinion arguing the Court should resolve the conflict.  *Id.* at 318.

most crucial "business interest."

*Tummala*, 927 So. 2d at 138. Yet, the Fifth District considered itself hampered by the express language of the statute.

We do not agree that the statute should be so narrowly construed as to exclude referral sources as a legitimate business interest. The statute does not expressly exclude referral relationships and neither does the holding in *Sanal*. In *Sanal*, the court correctly found that, with respect to patients of a medical practice, the statute expressly defined "legitimate business interest" to include only specific patients – not prospective ones.

Section 542.335, however, clearly states that the legitimate business interests listed in the statute are not exclusive. This allows the court to examine the particular business plans, strategies, and relationships of a company in determining whether they qualify as a business interest worthy of protection. Relationships with specific referral sources, which are not mentioned in the statute, are not the same as relationships with unidentified prospective patients. Here, it is undisputed that the relationships Amedisys is trying to protect are its referral sources. As the record shows, these doctors and clinics with whom it has developed substantial relationships are the "lifeblood" of its home health care business. The industry carefully cultivates these relationships over time and heavily depends upon them as a source of business. These referral sources appear to us to be a legitimate business interest as contemplated by section 542.335, Florida Statutes.[4]

In the contract covenant at issue here, "referral sources" are specifically mentioned as a valuable business interest. Amedisys hired Forjet because of her experience and contacts, compensated her accordingly, and supported her in maintaining and expanding those contacts. She, in turn, agreed not to solicit them for a competitor once she left Amedisys.

Infinity argues that, even assuming referral sources are a protectable legitimate business interest, Amedisys did not meet the statutory pleading and proof requirements to enforce the restrictive covenants.

Section 542.335(1)(c) provides:

---

[4] Other jurisdictions have recognized referral sources to be legitimate business interests. *See* Charles A. Carlson & Amy E. Stoll, *Business is Business: Recognizing Referral Relationships as Legitimate Business Interests Protectable By Restrictive Covenants in Florida*, 82 Fla. B.J. 49, 52 n.42 (2008).

A person seeking enforcement of a restrictive covenant also shall plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction. If a person seeking enforcement of the restrictive covenant establishes prima facie that the restraint is reasonably necessary, the person opposing enforcement has the burden of establishing that the contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest or interests. If a contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest or interests, a court shall modify the restraint and grant only the relief reasonably necessary to protect such interest or interests.

Infinity argues that Amedisys failed to prove that its business was impacted such that enforcement of the restrictive covenants was necessary. It asserts that Forjet had the Cleveland Clinic as a referral source long before her employment with Amedisys, and thus Amedisys cannot show that she gained some unfair advantage by continuing to communicate with those long-established sources. Additionally, Infinity argues that the referral sources for home health services cannot be legitimate business interests because the patients have choices and ultimately decide which company they want to use.

The record supports the trial court's finding that Amedisys made a sufficient evidentiary showing that enforcement of the restrictive covenants was reasonably necessary to prevent unfair competition. Infinity did not rebut the statutory presumption of irreparable harm and Amedisys established by competent evidence that: (1) as an employee of Infinity, Forjet was soliciting the same referral sources that had referred business to Amedisys, and (2) Cleveland Clinic referrals to Amedisys declined after Forjet left. As Amedisys points out, Infinity failed to cite any authority for its argument that referral from a physician or case manager cannot be a legitimate business interest merely because the patient can decline the referral. Moreover, there is no evidence that a significant number of patients decline referrals from their physicians and case managers. Here, Infinity does not dispute that Amedisys suffered some harm from Forjet's solicitation of its referral source; it challenges only Amedisys's failure to show the extent of the harm.

Finally, the record evidence supports the trial court's finding that the

restrictive covenants at issue in this case were limited in scope and reasonable. *See Jon Juan Salon, Inc. v. Acosta*, 922 So. 2d 1081, 1084 (Fla. 4th DCA 2006).

In sum, we hold that referral sources are a protectable legitimate business interest under section 542.335, Florida Statutes. Accordingly, we affirm the trial court's order granting temporary injunctive relief against Infinity and Forjet.

We hereby certify conflict with *Florida Hematology & Oncology v. Tummala*, 927 So. 2d 135 (Fla. 5th DCA 2006).

*Affirmed.*

WARNER and CONNER, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***