Roberts, J.
The appellant, Dr. Imraan Ansaarie, challenges a temporary injunction entered by the lower court on behalf of the appellee, First Coast Cardiovascular Institute, P.A. (FCCI), that severely restricted his ability to practice medicine in Putnam *289 County, Florida. We find no error with the temporary injunction and affirm.
Facts
FCCI is a professional medical practice that provides medical care in the fields of cardiovascular medicine and sleep disorders. FCCI operates medical offices in several Florida counties, including Putnam County. In 2013, FCCI began expending substantial resources to develop a cardiology practice in Putnam County, which included marketing, hiring physicians and support staff, and constructing a large catheterization laboratory within walking distance of the local hospital, Putnam County Medical Center (PCMC). PCMC also has its own catheterization laboratory wherein cardiologists employed by FCCI, as well as cardiologists who are not employed by FCCI, can practice. In 2013, FCCI contracted with PCMC to provide 24/7 "STEMI" services[1] at the hospital. FCCI expends significant resources annually in order to meet its contractual requirement with PCMC.
In furtherance of its efforts in Putnam County, FCCI recruited Dr. Ansaarie, a well-respected interventional cardiovascular surgeon, from out-of-state. Dr. Ansaarie entered into a Physicians Employment Agreement (the Agreement) with FCCI in April 2014, wherein he agreed to be bound by the terms and restrictive covenants of the Agreement. The non-competition provision prohibited Dr. Ansaarie from providing competing cardiovascular services within a five-mile radius of FCCI's practice for two years after termination of employment. The non-solicitation provision prohibited Dr. Ansaarie from soliciting[2] an FCCI patient, referral source, or vendor for competing cardiovascular services within the restricted geographic area and time period.
Dr. Ansaarie began his employment with FCCI in September 2014. FCCI invested in Dr. Ansaarie's success by marketing him and by providing him with access to FCCI's patients and referral sources. FCCI also arranged for Dr. Ansaarie to become the medical director of the PCMC Catheterization Laboratory, which position he assumed in 2015.
In October 2016, while still employed with FCCI, Dr. Ansaarie filed articles of incorporation with the Florida Department of State to create his own independent medical practice in Putnam County.[3] In November 2016, FCCI gave Dr. Ansaarie notice that his employment would terminate on March 23, 2017. After termination, Dr. Ansaarie continued to see patients at his independent medical practice and continued to treat patients at PCMC. He also continued to serve as director of the PCMC Catheterization Laboratory.
Injunctive Relief
FCCI immediately sought injunctive relief to restrain Dr. Ansaarie from breaching the restrictive covenants. FCCI alleged that it had legitimate business interests in its substantial relationships with specific prospective and/or existing patients and referral sources as well as legitimate business interests in the customer and patient goodwill that it had established in the area. FCCI put forth evidence that its referral *290 sources had declined since Dr. Ansaarie's departure and that many existing patients had asked to have their files transferred to Dr. Ansaarie's practice. The lower court granted the motion for temporary injunction, finding FCCI had satisfied all of the elements for temporary injunctive relief. The lower court found FCCI's asserted interests were "legitimate business interests," the restrictive covenants were valid and enforceable, and Dr. Ansaarie's contravention of these covenants would irreparably harm FCCI.
The order temporarily enjoined Dr. Ansaarie from, among other things, providing cardiovascular services within the prohibited five-mile radius, including treating patients at PCMC; soliciting FCCI's patients, and soliciting FCCI's referral sources or PCMC. On appeal, Dr. Ansaarie seeks relief from the temporary injunction.
Standard of Review
We review a lower court's factual findings in an order for temporary injunction for an abuse of discretion, but review legal conclusions de novo . DePuy Orthopaedics, Inc. v. Waxman , 95 So.3d 928, 933-34 (Fla. 1st DCA 2012). See also White v. Mederi Caretenders Visiting Servs. of Se. Fla., LLC , 226 So.3d 774, 779 (Fla. 2017) (applying a de novo review to the issue of whether home health care service referral sources were a protected legitimate business interest under section 542.335, Florida Statutes (2016) ).
To be entitled to a temporary injunction, FCCI had to plead and establish the following four elements: (1) the likelihood of irreparable injury, (2) the unavailability of an adequate remedy at law, (3) a substantial likelihood of success on the merits, and (4) a temporary injunction will serve the public interest. DePuy , 95 So.3d at 938 (citations omitted). A temporary injunction is an available remedy when a party establishes that it has a valid, enforceable restrictive covenant that was violated. § 542.335(1)(j), Fla. Stat. (2016). Subsections 542.335(1)(b) and (c), Florida Statutes (2016), set the standard for enforcing restrictive covenants and require the party seeking enforcement to plead and prove: (1) the existence of "one or more legitimate business interests" justifying the restrictive covenant and (2) the contractually specified restraint is reasonably necessary to protect the legitimate business interest(s). The lower court properly determined the restrictive covenants were valid and enforceable here.
Legitimate Business Interests
1. Prospective and Existing Patients
A "legitimate business interest" includes, but is not limited to, substantial relationships with "specific prospective or existing customers, patients or clients." § 542.335(1)(b) 3., Fla. Stat. (2016). The lower court found FCCI had demonstrated a legitimate business interest in prospective and existing patients. In University of Florida, Board of Trustees v. Sanal , 837 So.2d 512, 516 (Fla. 1st DCA 2003), this Court examined the language of section 542.335(1)(b) 3. and concluded "specific" modified "prospective"; therefore, in order for a relationship with a prospective patient to qualify as a legitimate business interest, a party had to prove the relationship was with a particular, identifiable individual. FCCI did not offer any evidence of "specific" prospective patients to meet this burden.
However, FCCI's proof that it lost existing patients distinguishes this case from Sanal wherein the injunction was denied for the aforementioned reasons, but also because the University was unable to prove that Dr. Sanal had treated any existing patients. Id. at 514. FCCI put forth evidence of its efforts to cultivate a cardiac practice in Putnam County before 2014 as well as evidence that a number of its patients *291 had recently requested to transfer their files to Dr. Ansaarie. The lower court properly found FCCI demonstrated a legitimate business interest in its substantial relationships with its existing patients. See Litwinczuk v. Palm Beach Cardiovascular Clinic, L.C. , 939 So.2d 268, 272 (Fla. 4th DCA 2006) (affirming a temporary injunction where a clinic established a legitimate business interest in its existing patients, forty-nine of which had been seen by the competing doctor in the same geographic area).
2. Substantial Investment: Existing Patient and Client Goodwill
"Legitimate business interest" also includes "customer, patient, or client goodwill" associated with "a specific geographic location" or "a specific marketing or trade area." § 542.335(1)(b) 4., Fla. Stat. (2016). In addition to proving a legitimate business interest in its substantial relationships with existing patients, FCCI also proved its substantial investments in developing its existing patient, client, and customer base as well as patient, client, and customer goodwill in Putnam County. See Southernmost Foot & Ankle Specialists, P.A. v. Torregrosa , 891 So.2d 591, 594 (Fla. 3d DCA 2004) (affirming the lower court's finding that Southernmost's investment in developing a podiatry practice in the Keys and recruiting Torregrosa for that practice constituted a legitimate business interest).
The lower court appropriately determined FCCI met its requirement under section 542.335(1)(c) by pleading and proving at least two legitimate business interests. Dr. Ansaarie ignores proof of the aforementioned legitimate business interests and contests two additional legitimate business interests on appeal. First, he argues that the lower court erred in interpreting physician referral sources to be a legitimate business interest. We reject this argument in light of the supreme court's recent holding that physician referral sources can constitute a legitimate business interest under section 542.335(1)(b). Mederi Caretenders , 226 So.3d at 786 (concluding that home health services referral sources may be a protected legitimate business interest "depending upon the context and proof adduced."). The lower court's finding in this regard was supported by competent, substantial evidence. Second, Dr. Ansaarie argues that FCCI's relationship with PCMC was not a legitimate business interest. We decline to address this argument as irrelevant because FCCI proved legitimate business interests necessary to justify the injunction's restrictions relating to existing patients, investment in Putnam County, and referral sources.
Reasonably Necessary
After demonstrating one or more legitimate business interests, FCCI was also required to plead and prove that the restraints were reasonably necessary to protect those interests. § 542.335(1)(c), Fla. Stat. (2016). The lower court properly found FCCI met this burden.
1. Restriction on Competition
Testimony showed the substantial financial and time investment FCCI had spent since 2013 to establish its cardiology practice in Putnam County and to recruit Dr. Ansaarie as a primary in the practice. The trial court found these efforts generated a substantial patient base and relationships that were legitimate business interests. Dr. Ansaarie does not challenge the two-year time limitation or the five-mile radius of the non-competition provision. FCCI proved that the restrictive covenants were reasonably necessary to protect its interests. See Torregrosa , 891 So.2d at 594 (finding similar evidence supported trial court's proper finding that a non-compete was reasonably necessary); see also Litwinczuk , 939 So.2d at 272.
*292 2. Restriction on Solicitation
Case law has recognized the right of employers to enforce similar non-solicitation provisions when a former employee solicits its customers. Smart Pharmacy, Inc. v. Viccari , 213 So.3d 986, 989 (Fla. 1st DCA 2016) ; Litwinczuk , 939 So.2d at 270, 272-73 ; Torregrosa , 891 So.2d at 593-96. Dr. Ansaarie does not focus his argument on whether the non-solicitation was reasonably necessary. He mainly argues that there was no evidence that he directly solicited any of FCCI's patients, clients, or customers. Dr. Ansaarie's argument is misplaced in that FCCI made a sufficient evidentiary showing that enforcement of the restrictive covenants was reasonably necessary to protect its interests. See Infinity Home, 180 So.3d at 1067 (finding evidence that former employee was soliciting the same referral sources and employer's evidence of a decline in referrals after former employee's departure was sufficient to find enforcement of restrictive covenants was reasonably necessary to prevent unfair competition).
Once FCCI established a prima facie case that the restrictive covenants were reasonably necessary, the burden shifted to Dr. Ansaarie to establish that the restrictive covenants were overbroad, overlong, or otherwise not reasonably necessary. § 542.335(1)(c), Fla. Stat. (2016). Dr. Ansaarie did not make any arguments below that the restrictive covenants were overbroad or overlong.
Injunctive Relief
The lower court properly concluded that the restrictive covenants were valid and enforceable. The court also found that Dr. Ansaarie violated the terms of the restrictive covenants, which finding was supported by competent, substantial evidence. Litwinczuk , 939 So.2d at 271. The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of the restrictive covenant. § 542.335(1)(j), Fla. Stat. (2016). Once the presumption passed from FCCI, it became Dr. Ansaarie's burden to demonstrate the absence of irreparable injury, which the trial court found he failed to do. Environmental Servs., Inc. v. Carter , 9 So.3d 1258, 1266 (Fla. 5th DCA 2009) ; see also Variable Annuity Life Ins. Co. v. Hausinger , 927 So.2d 243, 245 (Fla. 2d DCA 2006) (recognizing the presumed harm under section 542.335 includes potential damages to a party's longstanding relationships with its customers and the protection of confidential client information). Dr. Ansaarie does not challenge the trial court's findings on the other three prongs for injunctive relief: the unavailability of an adequate remedy at law, a substantial likelihood of success on the merits, and a temporary injunction will serve the public interest. Those findings were properly made and were supported by the evidence. We find the temporary injunction was properly entered and AFFIRM.
Rowe and Winokur, JJ., concur.

STEMI stands for ST-elevation myocardial infarction, which in layman's terms, encompasses serious heart attack patients.

The Agreement defined "solicit" to mean "initiate contact, or knowingly receive contact, or to in any manner cause or encourage contact."

Dr. Ansaarie's medical office was outside of the restricted five-mile area, but he could not perform any cardiovascular procedures in the office.