LEWIS, J.
DePuy Orthopaedics, Inc. (“DePuy”), Appellant, timely appeals from the trial court’s non-final order denying its motion for temporary injunction seeking to enforce non-compete covenants included in the Employment Agreements of Peter Waxman, Scott Londy, and Justin Montei-ro, Appellees. We reverse and remand for entry of a temporary injunction.
I. FACTS AND PROCEDURAL HISTORY
DePuy manufactures and sells orthopedic products, and it promotes the sale of its products through independent distributors. However, the distributors do not resell DePuy’s products. Instead, the distributors take orders for the products and submit those orders to DePuy. The distributors retain sales representatives to sell DePuy’s products. The sale of orthopedic products involves the necessity of developing goodwill via relationships with hospital administrators and surgeons. Surgeons, patients, and hospital administrators associate the use of the products with DePuy, not with its distributors or sales representatives. In order to protect the goodwill developed through these relationships, DePuy requires its distributors to execute non-compete covenants with the distributor’s sales representatives; also, DePuy requires that the covenants be assignable to itself. DePuy provides extensive sales training and service programs to its distributors.
DePuy has sold its products in southern Florida since the 1970’s. From 1999 to May 1, 2011, Joint Venture, Inc. (“Joint Venture”), was DePuy’s distributor for southern Florida. During the time Joint Venture distributed DePuy’s products in southern Florida, it employed Waxman as a sales representative and later as a sales manager.
In December 2002, Waxman entered into an Employment Agreement with Joint Venture. In the Employment Agreement, Waxman agreed, upon termination of his employment, not to compete for a period of two years “in Indian River, St. Lucie, Okeechobee, Martin, Palm Beach, Broward, and Dade County, Florida, in the manufacturing, developing, marketing, selling, pricing, or performance of services or goods which are the same or similar to services or goods manufactured, developed, provided, sold, or leased by [Joint Venture].” The Employment Agreement was terminable at will. Further, the Employment Agreement provided in paragraph 34, under the heading “ASSIGNMENT,” as follows: “[Joint Venture’s] rights and obligations under this Agreement shall inure to the benefit of and be binding upon [Joint Venture’s] assigns and successors. Since this Agreement is personal to Employee, Employee’s obligations under this *932 Agreement may not be assigned or transferred to any other.”
In January 2006, Waxman entered into another agreement containing a non-compete covenant with Joint Venture; in return, he was promoted to the position of sales manager. The new non-compete covenant also lasted for a period of two years and covered various counties, including Indian River, St. Lucie, Okeechobee, Martin, Palm Beach, Broward, and Dade County. The new non-compete covenant also provided that all of the terms and conditions in Waxman’s Employment Agreement remain in effect. Waxman performed services in most, if not all, of the southern Florida counties identified in the non-compete covenants.
Londy worked for Joint Venture as a sales representative for DePuy’s products for many years. In January 2003, Londy also entered into an Employment Agreement that contained a non-compete covenant that was effective for two years upon termination and covered the same counties as Waxman’s non-compete covenants. Londy performed services and received compensation for the counties covered by his non-compete covenant. Monteiro also worked for Joint Venture as a sales representative for DePuy’s products for many years, and his Employment Agreement, executed in August 2008, contained the same non-compete conditions described above. To the extent that Monteiro was not directly involved in sales in all of the counties covered in his non-compete covenant, he participated in sales meetings regarding all of the counties. Both Londy’s and Monteiro’s Employment Agreements contained a clause, identical to the clause that was agreed to by Waxman, that permitted assignment of the non-compete covenants. Like Waxman’s Employment Agreement, Londy’s and Monteiro’s Employment Agreements were terminable at will.
In March 2011, DePuy entered into an Amendment Agreement with Joint Venture and Mark DeBiase, Joint Venture’s President. In the Amendment Agreement, Joint Venture agreed that effective midnight on April 30, 2011, it would no longer be the distributor for DePuy’s products in Miami-Dade, Monroe, Broward, Palm Beach, Okeechobee, Martin, and St. Lucie Counties. The Amendment Agreement also provided that DePuy and its designees retain the sole right to enforce the non-compete covenants that Joint Venture had the right to enforce. Joint Venture assigned its rights in the identified counties, via the Amendment Agreement, in the following manner:
[Joint Venture] and [DeBiase] each hereby disclaims any right, title or interest in any and all intangible assets relating to the Counties, [DePuy’s] Products in the Counties or the right to act as a sales representative of [DePuy] in the Counties (“Intangible Assets ”). Such Intangible Assets include, without limitation, all intellectual property, goodwill, customer lists and the like regarding the Counties. If any rights in such Intangible Assets shall have become vested in [Joint Venture] or [DeBiase], each of them hereby assigns and conveys such rights to [DePuy].
On May 1, 2011, DePuy began distributing its products in these counties through a new distributor. Appellees learned before May 1, 2011, that Joint Venture would no longer be DePuy’s distributor. On May 1, 2011, Appellees began working for their new employer. Approximately three weeks after Appellees began working for their new employer, Appellees began calling accounts in their former DePuy territories. Appellees executed an agreement with their new employer that they would *933 be compensated even if they were enjoined from working in their former DePuy territories. Shortly after Appellees began calling the accounts, DePuy experienced a drop in sales with those accounts. De-Puy’s relationships with its customers were damaged.
After learning that Appellees began calling accounts in their former DePuy tetri-tories, Joint Venture and DePuy confirmed the assignment of Joint Venture’s rights in an Assignment Document dated May 27, 2011. The Assignment Document provided in pertinent part as follows:
This assignment includes but is not limited to the right to enforce the covenants not to compete executed by the individuals and to pursue damages. The agreements and covenants assigned include but are not limited to the Employment Agreements between Joint Venture and [Appellees], and the Non-Compete Covenant between Joint Venture and Peter Waxman.
In July 2011, DePuy filed a verified complaint, claiming that Appellees violated their non-compete covenants. Also, De-Puy filed an emergency motion for temporary injunction. Following an evidentiary hearing on DePuy’s motion, the trial court entered an order denying DePuy’s motion for injunction, finding that DePuy failed to prove irreparable injury. While the trial court noted that DePuy provided evidence that it had a drop in sales revenue in the counties mentioned in the non-compete covenant provisions, it stated that it was speculative at that point to assume that Appellees caused the drop in sales revenue. DePuy filed a motion for reconsideration, arguing that the trial court erred in finding that there was no irreparable injury because the applicable statute creates a presumption of irreparable injury if there is a violation of an enforceable restrictive covenant. DePuy argued that it was entitled to this presumption because the covenants were reasonable as to time, area, and line of business, and DePuy had proven that it had legitimate business interests in protecting its goodwill with customers. The trial court agreed that it erred and vacated the order.
After the trial court vacated its order, the trial court entered another order denying DePuy’s motion for injunction. In its order, the trial court reasoned as follows:
The assignment clause of each defendant’s employment contract with Joint Venture[], Inc. specifically states that “Since this Agreement is personal to Employee, Employee’s obligations under this Agreement may not be assigned or transferred to any other.” In light of this language the assignment of May 27, 2011 by Joint Venture, Inc. to DePuy of the defendants’ obligations under the employment contracts is prohibited. This contract language is consistent with Florida law on the subject of assignability of non-compete agreements by a former employer to a subsequent buyer or assignee. Sun Group Enterprises, Inc. v. DeWitte, 890 So.2d 410 (Fla. 5th DCA 2004); Corporate Express Office Products, Inc. v. Phillips, 847 So.2d 406 (Fla.2003); also see Wolf v. James G. Barrie, P.A., 858 So.2d 1083 (Fla. 2d DCA 2003). Under the circumstances plaintiff has no standing to enforce the covenants not to compete. For the reasons stated above and set forth in [Appellees’] memorandum .... [DePuy’s] Emergency Motion for Temporary Injunction is denied.
This appeal follows.
II. ANALYSIS
The standard of review of a trial court’s order on a motion for injunction is a hybrid inquiry. Bookall v. Sunbelt Rentals, Inc., 995 So.2d 1116, 1117 (Fla. 4th DCA 2008). We review the trial court’s *934 factual findings for an abuse of discretion. Id. at 1117. However, legal conclusions are subject to de novo review. Id. As a result, where a trial court’s order on a temporary injunction is based on an interpretation of a contract, de novo review is appropriate. See Envtl. Seros., Inc. v. Carter, 9 So.3d 1258, 1263 (Fla. 5th DCA 2009) (noting that appellate courts may independently evaluate the non-compete provisions to determine their meaning); see also Zupnik v. All Fla. Paper, Inc., 997 So.2d 1234,1238 (Fla. 3d DCA 2008).
In the instant case, we must determine whether the trial court erred in denying DePuy’s motion for injunction for the three reasons indicated in the trial court’s order. We address each reason in turn. First, the trial court stated that it was denying DePuy’s motion because Ap-pellees’ Employment Agreements contained a sentence providing that “[s]inee this Agreement is personal to Employee, Employee’s obligations under this Agreement may not be assigned or transferred to any other.” The trial court reasoned that this sentence precluded an assignment of the non-compete covenants. In employment agreements, as with all contracts, courts must apply the “most commonly understood meaning with regard to the subject matter and circumstances of the contract.” Gold Coast Media, Inc. v. Meltzer, 751 So.2d 645, 646 (Fla. 3d DCA 1999); see also Ferreira v. Home Depot/Sedgwick CMS, 12 So.3d 866, 868 (Fla. 1st DCA 2009) (noting that contracts must be “construed in accordance with the plain meaning of the words contained therein”). As such, the trial court erred in concluding that Joint Venture could not assign its non-compete covenants under the Employment Agreements because the sentence cited by the trial court was immediately preceded by the following sentence: “[Joint Venture’s] rights and obligations under this Agreement shall inure to the benefit of and be binding upon [Joint Venture’s] assigns and successors.” The second sentence relied upon by the trial court has nothing to do with Joint Venture’s ability to assign its rights and obligations. Rather, as noted by DePuy, the second sentence prohibits Appellees from assigning their obligations to third parties, such as their obligations to work under the Employment Agreements and abide by their obligations not to compete. On the other hand, Joint Venture assigned its rights, as it was permitted to do so, because of the language in the first sentence. In other words, the plain language of the Employment Agreements allowed Joint Venture to assign its “rights and obligations.” Thus, the trial court erred as a matter of law by ignoring the plain language of the Employment Agreements and reasoning that Joint Venture was prohibited from assigning the non-compete covenants.
Appellees also argue that Joint Venture did not assign to DePuy the right to enforce the non-compete covenants. We disagree. The Employment Agreements did not require a formal assignment to effect a transfer of these covenants because the plain language of the Employment Agreements provides that “[Joint Venture’s] rights and obligations under this Agreement shall inure to the benefit of ... [Joint Venture’s] assigns and successors.” Also, in the Amendment Agreement executed by Joint Venture and De-Puy in March 2011, Joint Venture stated that it assigned all of its intangible assets in the southern Florida territory to De-Puy, including “all intellectual property, goodwill, customer lists and the like regarding the Counties.” More importantly, the Amendment Agreement expressly provided that DePuy retained the sole right to enforce all non-compete covenants in favor *935 of Joint Venture. These provisions clearly assigned to DePuy the right to enforce the non-compete covenants. Thus, as noted, all rights in the ongoing business were explicitly assigned to DePuy.
Next, Appellees also contend that Joint Venture could not assign only its right to enforce the non-compete covenants to DePuy because the Employment Agreements provided that Joint Venture could assign its rights and obligations. In other words, Appellees argue that continued employment of Appellees by the as-signee was a prerequisite to a valid assignment. However, this contention is contradicted by the Employment Agreements’ provisions providing that Appellees were terminable at will. Based on the plain language of the Employment Agreements, Appellees could not have expected that a valid assignment existed only if their employment continued into the future. Thus, Appellees’ argument is merit-less.
The second basis set forth in the trial court’s order for denying DePuy’s motion was the trial court’s conclusion that its holding was supported by “Florida law on the subject of assignability of non-compete agreements by a former employer to a subsequent buyer or assignee.” This was error because the Florida law relied on by the trial court is case law that applied the predecessor statute, which applied to non-compete agreements entered into before July 1, 1996, as explained below. In the first case cited by the trial court, Sun Group Enterprises, Inc. v. DeWitte, 890 So.2d 410, 411 (Fla. 5th DCA 2004), the Fifth District relied on Corporate Express Office Products, Inc. v. Phillips, 847 So.2d 406 (Fla.2008), which analyzed the predecessor statute, section 542.33, Florida Statutes (1985). In the second case, Corporate Express, the Florida Supreme Court analyzed and applied section 542.33 to the facts of that case. The Florida Supreme Court stated in pertinent part the following:
This statutory provision applies to non-compete agreements entered into before July 1, 1996, at which time section 542.33 was replaced by section 542.335, Florida Statutes (Supp.1996). See Ch. 96-257, §§ 1-2, at 983-87, Laws of Fla. Section 542.331, Florida Statutes (2002), specifically provides that the repeal of section 542.33 does not affect restrictive covenants entered into before July 1, 1996.
847 So.2d at 409 (footnote omitted). Under the predecessor statute, a non-compete covenant could be assigned, but only if the employee consented to the assignment. Id. at 413. In the third case, Wolf v. James G. Barrie, P.A., 858 So.2d 1083 (Fla. 2d DCA 2003), the Second District also analyzed and applied the predecessor statute, section 542.33, to the facts of that case.
However, the 2002 and 2006 non-compete covenants between Waxman and Joint Venture, the 2003 non-compete covenant between Londy and Joint Venture, and the 2003 non-compete covenant between Mon-teiro and Joint Venture are governed by section 542.335, Florida Statutes (2002), which replaced section 542.33.[1] See Gup- *936 ton v. Village Key & Saw Shop, Inc., 656 So.2d 475, 478-79 (Fla.1995) (holding that the enforceability of a non-compete covenant is controlled by the law at the time that the agreement took effect). The pertinent portion of that statute expressly allows assignment of non-compete covenants executed after July 1, 1996, when the agreements so provide:
[ (1) ](f) The court shall not refuse enforcement of a restrictive covenant on the ground that the person seeking enforcement is a third-party beneficiary of such contract or is an assignee or successor to a party to such contract, provided:
[[Image here]]
2. In the case of an assignee or successor, the restrictive covenant expressly authorized enforcement by a party’s as-signee or successor.
[[Image here]]
(3) This act shall apply prospectively, and it shall not apply in actions determining the enforceability of restrictive covenants entered into before July 1, 1996.
§ 542.335(l)(f)2, (3). This statutory provision, which expressly allows assignment of non-compete covenants, rendered the case law relied on by the trial court that applied the predecessor statute, section 542.33, inapplicable to the facts of this case. As such, the trial court erred in relying on case law applying the predecessor statute; instead, it should have applied section 542.335, the new statute, to determine the enforceability of the assignment of the non-compete covenants to DePuy. As discussed above, the plain language of the Employment Agreements provided that Joint Venture could assign all of its rights and obligations to its assignees. Thus, Joint Venture properly assigned Appellees’ non-compete covenants to DePuy.
We note that Appellees briefly raised the point below in their response in opposition to DePuy’s motion for injunction that the Employment Agreements did not comply with the requirements of section 542.335(l)(f)2. Appellees did not argue this point during the hearing on the motion for injunction or in their subsequently-filed closing argument memorandum, nor have they raised this point in this appeal as a basis for affirming the trial court’s decision based on the tipsy coachman rule.[2] Moreover, the record before us *937 is devoid of a motion to dismiss or any other pretrial motion filed by Appellees in the proceedings below arguing this point. However, the dissent argues, apparently based on the tipsy coachman rule, that the trial court’s order may be affirmed on this point.
In our view, the record is not sufficiently developed to allow affirmance on this point. But, even if the record were sufficiently developed to allow affirmance on this point, this point would lack merit. We find Patel v. Boers, 68 So.3d 380 (Fla. 5th DCA 2011), which squarely addressed the point at hand, persuasive. In Patel, the purchaser of a dental practice filed a complaint for injunctive relief, seeking to enforce a non-compete covenant in the Provider Agreement entered into by the seller and the employee, a dentist. Id. at 381. The employee, unlike Appellees in this case, moved to dismiss the injunction claim, arguing that the purchaser lacked standing to enforce the restrictive covenant because the Provider Agreement did not comply with the requirements of section 542.335(l)(f)2. Id. The Provider Agreement that Patel was seeking to enforce contained a non-compete provision, and it “also contained a general assignment clause whereby [the parties] ‘specifically agreed that the mutual and reciprocal covenants and agreements, rights and obligations contained in this Provider Agreement are assignable.’ ” Id. The trial court in Patel found that this language was insufficient to allow assignment of the non-compete covenant because under section 542.335(l)(f), “restrictive covenants can only be enforced by an assignee if the requisite statutory language is included in the covenants.” Id. The Fifth District disagreed, finding that “[t]he assignment language contained in the instant Provider Agreement is sufficient to constitute an express authorization of enforcement by an assignee or successor as required by the statute.” Id. We note that the provision authorizing assignment in the instant case complies more explicitly with the statute than the language found in Patel. There, the Provider Agreement provided that the rights and obligations of the employer “are assignable,” see id., while in the instant case, the Employment Agreements provided under the heading “ASSIGNMENT” that the rights and obligations of Joint Venture “shall inure” to Joint Venture’s assignee. Therefore, like the Provider Agreement in Patel, the provisions at issue here are sufficient to constitute an express authorization of enforcement by an assign-ee or successor, as required by the statute and, on the record before us, there is no basis for affirming the trial court’s order based on the tipsy coachman rule.
Our conclusion on this point is further buttressed by section 542.335(l)(h), which provides that “[a] court shall construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests.... A court shall not employ any rule of contract construction that requires a court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract.” Additionally, “[t]he law is well established that an unqualified assignment transfers to the assignee all the interests and rights of the assignor in and to the thing assigned.” State v. Family Bank of Hallandale, 667 So.2d 257, 259 (Fla. 1st DCA 1995). The legislature is presumed to know the law when it enacts statutes, and thus, the statutory requirement of an “expressly authorized enforcement” of the restrictive covenant to the assignee is satisfied by a general assignment clause in the contract creating the *938 restrictive covenant. Had the legislature intended to exclude general assignment clauses as satisfying the statutory requirement, the legislature would have so stated. It is not difficult to envision a contract containing a restrictive covenant and a partial assignment clause that does not reference the restrictive covenant. In such a situation, the assignee would not be entitled to enforce the covenant, but that is not the case here.
The third basis for the trial court’s denial of DePuy’s motion was for the reasons contained in Appellees’ closing argument memorandum. Although the trial court’s order did not address the prerequisites for entry of a temporary injunction, Appellees asserted in their closing argument memorandum that DePuy did not establish any of the four elements needed to show that it was entitled to a temporary injunction. We disagree.
Generally, to demonstrate that a temporary injunction is warranted, a party must plead and establish four elements: “(1) the likelihood of irreparable [injury], (2) the unavailability of an adequate remedy at law, (3) a substantial likelihood of success on the merits, and (4) that a temporary injunction will serve the public interest.” Envtl. Servs., Inc. v. Carter, 9 So.3d 1258, 1261 (Fla. 5th DCA 2009); see also Masters Freight, Inc. v. Servco, Inc., 915 So.2d 666, 666 (Fla. 2d DCA 2005). We address each element that DePuy must establish to demonstrate that a temporary injunction is warranted.
A. Substantial Likelihood of Success on the Merits
We first address Appellees’ argument that DePuy failed to establish that it had a substantial likelihood of success on the merits. In that regard, we look to section 542.335(l)(b), which addresses the enforceability of a non-compete covenant and provides as follows:
[l](b) The person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant. The term “legitimate business interest” includes, but is not limited to:
1. Trade secrets, as defined in s. 688.002(4).
2. Valuable confidential business or professional information that otherwise does not qualify as trade secrets.
3. Substantial relationships with specific prospective or existing customers, patients, or clients.
4. Customer, patient, or client goodwill associated with:
a. An ongoing business or professional practice, by way of trade name, trademark, service mark, or “trade dress”;
b. A specific geographic location; or
c. A specific marketing or trade area.
5. Extraordinary or specialized training.
Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable.
Here, Joint Venture properly assigned its right to enforce the non-compete covenants to DePuy. As required by section 542.335(l)(b) to enforce a non-compete covenant, DePuy presented unrebutted evidence that it had legitimate business interests justifying the non-compete covenants. DePuy has sold its products in southern Florida since the 1970’s. Joint Venture’s customers contract directly with DePuy and are invoiced by DePuy. Appellees promoted DePuy’s products and took orders, but surgeons, patients, and hospital administrators associate the use of its *939 product with DePuy, not with its distributors or sales representatives. Additionally, DePuy presented unrebutted evidence that its substantial relationships with existing customers were damaged. Moreover, Joint Venture assigned all of its goodwill to DePuy in the Amendment Agreement. DePuy also presented a legitimate business interest in the specialized training, advertising, and professional support it gave to Appellees. Further, DePuy established that the non-compete covenants are reasonably necessary to protect its legitimate business interests, as Appellees began calling accounts it had while working for Joint Venture in the counties listed in the non-compete covenants. Thus, DePuy met its burden of establishing that it is substantially likely to succeed against Ap-pellees in its verified complaint.
B. Likelihood of Irreparable Injury
Next, we address Appellees’ argument that DePuy failed to establish that it had a likelihood of suffering irreparable injury. Section 542.335(l)(j) provides in pertinent part that “[t]he violation of an •enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant....” Once a violation of a non-compete covenant is established by prima facie evidence, the statute shifts the burden to the respondent to establish the absence of injury. See Variable Annuity Life Ins. Co. v. Hausinger, 927 So.2d 243, 245 (Fla. 2d DCA 2006) (“ ‘[A] party seeking to enforce a restrictive covenant by injunction need not directly prove that the defendant’s specific activities will cause irreparable injury if not enjoined .... ’ the statute operates to create a presumption of irreparable injury to the employer and ... the burden shifted to [the employee] to establish the absence of such injury.”) (quoting Am. II Elees., Inc. v. Smith, 830 So.2d 906, 908 (Fla. 2d DCA 2002)).
DePuy presented a prima facie case that Appellees violated their non-compete covenants, and Appellees failed to establish the absence of an injury. Simply stated, DePuy established the presumption, and Appellees failed to rebut the presumption of irreparable injury created by section 542.335(l)(j). Moreover, in vacating its prior order, the trial court agreed with DePuy that DePuy was entitled to the presumption. Instead of showing an absence of injury, the record evidence reflects that Appellees began calling the same hospitals and surgeons that they had as accounts while working for Joint Venture in the counties listed in the non-compete covenants. Finally, DePuy presented unrebutted evidence that it was significantly harmed by Appellees’ actions; specifically, it showed that shortly after Appellees began calling their former accounts, DePuy experienced a drop in sales with those accounts and that DePuy’s relationships with its customers were damaged. While DePuy acknowledges that the presumption of irreparable injury can be rebutted under the appropriate facts, we agree with DePuy that the presumption was not rebutted here. Accordingly, DePuy presented a prima facie case of a violation of an enforceable restrictive covenant and is entitled to the statutory presumption of irreparable injury.
C. Unavailability of an Adequate Remedy at Law
Neither the trial court’s order nor Appellees’ memorandum directly addressed the third prerequisite for the entry of a temporary injunction, the unavailability of an adequate remedy at law. Nevertheless, we find that the record before this Court demonstrates that DePuy established this prerequisite that was not specifically addressed in the trial court’s order or Appellees’ memorandum. Any *940 continued breach of the Employment Agreements and non-compete covenants could further damage DePuy’s goodwill and relationships with its customers, and nothing short of an injunction would prevent this loss. See Variable Annuity Life Ins. Co. v. Hausinger, 927 So.2d 243, 245 (Fla. 2d DCA 2006) (explaining that, “[t]he focus of preliminary injunctive relief is on maintaining long standing relationships and preserving the goodwill of a company built up over the course of years of doing business ... Plaintiffs ... argument that there is no irreparable harm because Plaintiffs injuries, if any, are subject to a monetary judgment, is equally without merit and has been rejected by other courts, where, as here, there is a statutory presumption of irreparable harm.”) (quoting N. Am. Prods, v. Moore, 196 F.Supp.2d 1217, 1280-31 (M.D.Fla.2002)).
D. The Public Interest in Issuing an Injunction
Next, Appellees argue that an injunction disserves the public interest and that the balance of harms favors them because they would suffer harm if they were enjoined. Appellees’ argument is without merit. The record evidence demonstrates that Appellees would receive the same compensation even if they were enjoined. Also, Appellees’ argument is in conflict with section 542.335(l)(g)l, which states as follows: “In determining the enforceability of a restrictive covenant, a court ... [sjhall not consider any individualized economic or other hardship that might be caused to the person against whom enforcement is sought.”
Furthermore, a trial court must specifically articulate an overriding public policy reason if it refuses to enforce a non-compete covenant based on public policy grounds. § 542.335(l)(i). Neither the trial court nor Appellees identified any such public policy that would override enforcement of the valid non-compete covenants in the instant case. Thus, DePuy met its burden.
III. CONCLUSION
We find that the record before this Court demonstrates that DePuy established each prerequisite needed for entry of a temporary injunction. Accordingly, the trial court reversibly erred in denying the motion for temporary injunction. Based on the foregoing, we reverse the trial court’s order denying DePuy’s motion for temporary injunction and remand with instructions to enter a temporary injunction against Appellees, to begin on the date on which the trial court enters its order. Pursuant to Florida Rule of Civil Procedure 1.610(b), the trial court is advised that it is required to set an injunction bond.
REVERSED and REMANDED with instructions.
THOMAS, J., concurs; WOLF, J., Dissents with Opinion.

. The Florida Supreme Court has explained the effect of the new statute as follows:
According to the Senate Staff Analysis, section 542.335 "substantially expands and clarifies the non[-]compete statute governing validity and enforcement of contracts in restraint of trade.” Fla. S. Comm. on Judiciary, SB 282 (1996) Staff Analysis 5 (Mar. 27, 1996). Section 542.335(1) allows for enforcement of contracts that restrict or prohibit competition so long as the contracts are "reasonable in time, area, and line of business.” Section 542.335(l)(h) provides that a court "shall construe a re *936 strictive covenant in favor of providing reasonable protection to all legitimate interests established by the person seeking enforcement.” Section 542.335(1 )(i) further provides:
No court may refuse enforcement of an otherwise enforceable restrictive covenant on the ground that the contract violates public policy unless such public policy is articulated specifically by the court and the court finds that the specified public policy requirements substantially outweigh the need to protect the legitimate business interest or interests established by the person seeking enforcement of the restraint.
Corp. Express Office Prods., Inc. v. Phillips, 847 So.2d 406, 409 n. 2 (Fla.2003).

. The tipsy coachman rule provides that " ‘if a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record.' " Malu v. Sec. Nat. Ins. Co., 898 So.2d 69, 73 (Fla.2005) (quoting Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.. 1999)). The supreme court has explained the rule as follows:
“[I]t follows that an appellee, in arguing for the affirmance of a judgment, is not limited to legal arguments expressly asserted as grounds for the judgment in the court below. It stands to reason that the appellee can present any argument supported by the record even if not expressly asserted in the lower court.... [A]n appellee need not raise and preserve alternative grounds for the lower court's judgment in order to assert them in defense when the appellant attacks the judgment on appeal.”
*937 Id. (quoting Radio Station WQBA, 731 So.2d at 645).