COHEN, J.
Avalon Legal Information Services, Inc., a Florida corporation (“Avalon”), and Judy B. Schneider (“Schneider”) appeal from the trial court’s non-final order temporarily enjoining them in accordance with a non-compete/non-solicitation covenant executed in favor of Gerard F. Keating (“Keating”). Avalon and Schneider challenge the grounds for the temporary injunction, the breadth of the injunction order, and the bond set by the trial court. We affirm the injunction and the amount of bond required, but remand for modification of certain terms of the injunction.
From 1998 to 2008, Schneider worked for an attorney who was the first to provide civil service of process training and consulting to Florida’s sheriffs.[1] Schneider, who formerly worked for the Volusia County Sheriffs Office for over thirty years, served as the attorney’s assistant and paralegal. When the attorney retired from the practice of law in 2003, Schneider undertook the purchase of the business and entered into an agreement with Keat-ing to allow him' to act as the supervising attorney over the consulting contracts. In 2004, the retired attorney sold his contracts with forty-three sheriffs’ offices, along with a training program and instruction materials, to Schneider.
Schneider, in turn, bifurcated the business and sold the consulting portion to Keating. Under the purchase agreement, Keating was to pay Schneider $200,000 over four years, with $50,000 down and the balance to be paid from the proceeds of the consulting contracts each quarter. The parties agreed to split the proceeds of the business evenly, with Keating’s payment to Schneider coming from his share of the profits. At the same time in 2004, Schneider sold the training and education portion of the business to George W. Kent (“Kent”), president and CEO of Avalon. Kent, ineligible to practice law in Florida since 1986, was Schneider’s former instructor at paralegal school.
From 2004 to 2008, Keating and Schneider worked the consulting contracts together. Schneider responded to telephone, e-mail and facsimile inquiries, reviewed documents, and provided advice to sheriffs, all subject to Keating’s supervision. Schneider simultaneously worked for Avalon as an instructor in its training program and co-authored a civil process *79 manual with Kent. Keating also was involved to a small extent in Avalon’s training program, occasionally guest-lecturing at its school, and was held out to be a legal expert in its course material.
By August 2008, Keating had paid the balance he owed for the original forty-three contracts, and had grown the business to include additional sheriffs’ offices. On October 1, 2008, Keating and Schneider entered into the Independent Contractor Agreement. Per the agreement, Schneider was to continue to perform the same paralegal services for Keating as an independent contractor. She was to draw a salary of forty percent of the gross revenue, estimated to be approximately $70,000 yearly. The agreement was to last two years, until September 2010, subject to Schneider’s health and ability to work, and was renewable at the parties’ option for an additional two years.
Of particular import, the agreement incorporated a non-compete/non-solieitation covenant. While recognizing that Schneider was an instructor and manual writer for Avalon, the covenant prohibited her from competing with and soliciting Keating’s civil process contracts in the State of Florida for three years following the expiration of the Independent Contractor Agreement (until September 2013).
Keating and Schneider operated successfully under this arrangement until September 2010. By then, Keating had four-year contracts with fifty-four sheriffs’ offices, each set to renew in 2012. Schneider, however, opted not to renew the Independent Contractor Agreement when it expired.
In mid-September 2010, Keating received a copy of a solicitation letter signed by Kent and sent by Avalon to all sixty-seven of Florida’s sheriffs’ offices. The letter highlighted two new changes at Avalon, the first being that Schneider— who was known by clients as an instructor at the school and as “a paralegal responding to questions by phone” — was going to start working exclusively for Avalon. The second change constituted Avalon’s expanded services, which included “a new Help CD and 24/7 telephone support ... designed to answer most questions that have come up about enforceable and nonenforceable process.” A flyer attached to the letter emphasized Avalon’s “New Bundle of Services” and its reduced cost.
In an effort to prevent Keating’s clients from cancelling their contracts, which contained a unilateral cancellation clause, Keating and Kent agreed to send a joint letter, explaining that Keating remained the sheriffs’ legal consultant on civil process matters and that Avalon did not provide legal advice. Over the course of the next year, however, sixteen sheriffs’ offices cancelled their contracts with Keating.
In September 2011, Keating filed a sworn complaint against Avalon, Kent and Schneider for temporary and permanent injunctive relief, an accounting, tortious interference with contractual relationships, and attorney’s fees.[2] Keating subsequently moved for a temporary injunction and a hearing was held at which only he testified.
At the hearing, Keating explained that he had Schneider sign the non-compete agreement because she enjoyed a great deal of goodwill and personal loyalty with the clients, and he did not want to compete against her after purchasing the contracts. Interpreting the solicitation letter, he be *80 lieved Schneider and Avalon were directly competing against him as they were offering his clients, at a lower price, the same telephonic support and document review service that he provided. When Keating confronted Kent, who knew of the non-compete/non-solicitation covenant, Kent indicated an unwillingness to stop the solicitation. Kent allegedly told Keating he had gone over the non-compete/non-solicitation covenant with Schneider, and they concluded it was unenforceable. Despite sending the joint letter, Keating testified that he received eighteen cancellations, resulting in a loss of $55,200 in revenue from September 2010 to September 2011. Cancellation letters from, and contracts with, the subject sheriffs’ offices were entered into evidence. According to Keating, future losses were difficult to quantify given the expiration period of the existing contracts in 2012, Avalon’s continued solicitation efforts, and ongoing discovery. He believed that, had Avalon not offered the bundled service in competition against him, the sheriffs’ offices would have renewed their contracts in 2012.
A copy of a recent Avalon contract, sent to one of Keating’s former clients, was admitted into evidence and showed that Avalon was providing telephonic support, “Consultation/Research on civil process matters in conjunction with sheriffs in-house legal counsel,” and annual site visits to review “procedures/policies” and to answer questions. While the contract warned that Avalon was not offering “legal consulting or legal services of any kind,” and that Avalon would work closely with the sheriffs in-house legal counsel if an issue required legal advice, Keating testified the disclaimer was added after suit was filed.
The trial court granted the temporary injunction as to Avalon and Schneider, but not as to Kent based on his status as a corporate officer. Regarding the bond, Avalon’s and Schneider’s counsel requested an amount higher than $55,000 — the loss amount to which Keating testified. Keating’s counsel requested a bond of $1,000. The trial court set bond at $10,000 and explained that the injunction was temporary and subject to a motion to dissolve at any time. This appeal followed.
Generally, a trial court is afforded “wide discretion to either grant, deny, dissolve, or modify a temporary injunction, and an appellate court will not intercede unless the aggrieved party clearly shows' an abuse of discretion.” Meyers v. Club at Crystal Beach Club, Inc., 826 So.2d 1086, 1089 (Fla. 5th DCA 2002); see also Gold Coast Chem. Corp. v. Goldberg, 668 So.2d 326, 327 (Fla. 4th DCA 1996) (noting trial court’s ruling on temporary injunction is clothed in presumption of correctness). To the extent a trial court’s ruling on a temporary injunction pertains to a purely legal matter, review is de novo. Suggs v. Sw. Fla. Water Mgmt. Dist., 953 So.2d 699, 699 (Fla. 5th DCA 2007).
Despite the sound discretion enjoyed by the trial court, a temporary injunction is an extraordinary remedy, to be granted sparingly and only after the moving party establishes the following criteria: “(1) the likelihood of irreparable harm; (2) the unavailability of an adequate remedy at law; (3) a substantial likelihood of success on the merits; and (4) consideration of the public interest.” Colonial Bank, N.A. v. Taylor Morrison Servs., Inc., 10 So.3d 653, 655 (Fla. 5th DCA 2009); see also Fla. R. Civ. P. 1.610(a). To enforce a restrictive covenant by the injunctive power of the courts, the covenant must fall within the parameters of section 542.335, Florida Statutes (2008). Supinski v. Omni Healthcare, P.A., 853 So.2d 526, 529-30 (Fla. 5th DCA 2003); see also § 542.335(l)(j), Fla. Stat.
*81 Section 542.335 contains a comprehensive framework for analyzing, evaluating and enforcing restrictive covenants contained in contracts. Henao v. Prof'l Shoe Repair, Inc., 929 So.2d 723, 726 (Fla. 5th DCA 2006). Among the prerequisites to enforceability, the statute requires that the restrictive covenant be in writing and signed by the person against whom enforcement is sought; be reasonable- in time, area, and line of business (i.e., scope); and be reasonably necessary to protect one or more legitimate business interests. § 542.335(l)(a)-(e), Fla. Stat. A “legitimate business interest” includes, but is not limited to: (1) trade secrets; (2) valuable confidential business or professional information not otherwise considered trade secrets; (3) substantial relationships with specific prospective or existing customers; (4)client goodwill;[3] and (5) specialized training. § 542.335(l)(b)l.-5., Fla. Stat. Once the moving party has established a prima facie case that the restriction is reasonably necessary to protect a legitimate business interest, the opposing party then has the burden of establishing that the restraint is “overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest or interests.” § 542.335(l)(c), Fla. Stat. If a restraint is overbroad, the court “shall modify the restraint and grant only the relief reasonably necessary to protect such interest or interests.” Id. The statute further instructs:
A court shall construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement. A court shall not employ any rule of contract construction that requires the court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract.
§ 542.335(l)(h), Fla. Stat.
On appeal, Avalon and Schneider raise four challenges to the grounds underlying the injunction. First, they argue the trial court erred in finding that Schneider violated the non-compete/non-solicitation covenant by working for Avalon, causing irreparable harm to Keating. The trial court’s finding, however, is amply supported by evidence which included Keat-ing’s testimony, Avalon’s solicitation letter, and a copy of one of Avalon’s civil process contracts. The restrictive covenant clearly prohibited Schneider from answering questions and reviewing documents as a civil process consultant or paralegal for any entity that competed for or solicited Keating’s clients. That prohibition was not vitiated by the recital that recognized Schneider’s role as Avalon’s primary civil process instructor and manual writer. While the recital language implied she could answer Avalon’s clients’ questions and review documents in her capacity as a civil process educator, the covenant made clear she could not act as a civil process consultant or paralegal for Avalon as she had done.
According to section 542.335(l)(j), Florida Statutes, Schneider’s violation of the restrictive covenant created a presumption of irreparable injury to Keating. As the trial court did not find this presumption rebutted by the fact that Keating quantified the loss at the hearing and provided a list of cancelled contracts, irrepa- *82 rabie harm was established. See Litwinczuk v. Palm Beach Cardiovascular Clinic, L.C., 939 So.2d 268, 272 (Fla. 4th DCA 2006).
Second, Avalon and Schneider contend the trial court erred in finding the non-compete/non-solicitation covenant protected a legitimate business interest. Specifically, the trial court determined the covenant protected Keating’s “substantial relationships with existing and prospective clients” and “client goodwill.” Avalon and Schneider claim Keating’s relationships were not “substantial” under subsection 542.335(l)(b)3., Florida Statutes, because Schneider enjoyed long-standing relationships with Keating’s clients prior to working for him. However, their argument ignores the fact that Keating paid Schneider $200,000 for the consulting business, which included Schneider’s client relationships and goodwill. Because the purchaser of the assets and goodwill of a business has a legitimate business interest in preventing the seller from servicing former clients, the trial court did not err in finding the non-compete/non-solicitation covenant was supported by a legitimate business interest. See USI Ins. Servs., of Fla. Inc. v. Pettineo, 987 So.2d 763, 766 (Fla. 4th DCA 2008); see also § 542.33(2)(a), Fla. Stat. (2008).
Alternatively, Avalon and Schneider claim the non-compete/non-solicitation covenant was not reasonably necessary to protect any legitimate business interest pursuant to section 542.335(l)(c), Florida Statutes, because it eliminated all competition and prevented Schneider from gainful employment. To the contrary, the restrictive covenant only prohibits Schneider from servicing “any Sheriff who is, or has been an [sic] customer of Gerard F. Keat-ing....” According to this language, Schneider remains free to compete with Keating and solicit the remaining sheriffs’ offices not under contract with Keating or not specifically identified as a prospective customer. See Envtl. Servs., Inc. v. Carter, 9 So.3d 1258, 1263-64 (Fla. 5th DCA 2009) (interpreting non-compete provision in similar fashion). Moreover, Schneider is free to provide other civil process services, such as the educational and manual drafting services she has been offering Avalon’s clients all along, or advice to private process servers or companies. Cf. Edwards v. Harris, 964 So.2d 196, 198 (Fla. 1st DCA 2007) (reversing injunction that prevented employee from working with a competitor in any capacity).
As for their third challenge, Avalon and Schneider argue the non-compete/non-solicitation covenant’s three-year time limitation was presumptively unreasonable under section 542.335(l)(d), Florida Statutes. Despite any statutory presumption, however, the trial court found the evidence supported the conclusion that the limitation was reasonable. Keating testified at the hearing that the three-year limitation was chosen because the contracts entered into in 2008 were set to expire in 2012. By prohibiting Schneider from competing until after the first year of the second contract cycle (2013), Keating believed his clients would renew their contracts. Any limitation of less than three years would have done little to protect the contracts. The trial court may have also considered Schneider’s importance in the field of civil service consulting. See Dorminy v. Frank B. Hall & Co., 464 So.2d 154, 158 (Fla. 5th DCA 1985) (“[T]he higher in management and the more key or important the function performed by the employee[,] the longer the time which could be justified for a no-competition covenant.”). As such, the trial court did not err in finding the three-year limitation reasonable.
*83 Lastly, Avalon and Schneider claim the non-compete/non-solieitation covenant is unenforceable because it contravenes public policy by violating the Florida Rules of Professional Conduct.[4] In considering the enforceability of a restrictive covenant, the trial court “[s]hall consider all other pertinent legal and equitable defenses”; and “the effect of enforcement upon the public health, safety, and welfare.” §§ 542.335(l)(g)3., 4., Fla. Stat. At the same time, however, the statute provides:
No court may refuse enforcement of an otherwise enforceable restrictive covenant on the ground that the contract violates public policy unless such public policy is articulated specifically by the court and the court finds that the specified public policy requirements substantially outweigh the need to protect the legitimate business interest or interests established by the person seeking enforcement of the restraint.
§ 542.335(l)(i), Fla. Stat.
Here, the trial court articulated no such public policy that would have substantially outweighed the need to protect Keating’s legitimate business interests, nor have Avalon and Schneider identified one on appeal. Cf. DePuy Orthopaedics, Inc. v. Waxman, 95 So.3d 928, 940 (Fla. 1st DCA 2012) (finding neither trial court nor enjoined party identified public policy that would override enforcement of valid non-compete covenant). Instead, the trial court’s order recognized that public policy favored the enforcement of valid contractual rights. See Hilb Rogal & Hobbs of Fla., Inc. v. Grimmel, 48 So.3d 957, 962 (Fla. 4th DCA 2010). As Avalon and Schneider have been unable to establish any error as to the grounds for the temporary injunction, we hold that the restrictive covenant was enforceable.
While enforceable, however, we find the injunction against Avalon and Schneider is overly broad. The non-compete/non-solicitation covenant restricted Schneider from civil process “consulting,” which the Independent Contractor Agreement described as “handling] all phone calls and fax reviews to questions of the proper service and execution of civil process from contracted Sheriffs.” However, the injunction against Avalon and Schneider goes beyond prohibiting civil process consulting. Paragraph B of the injunction restricts Schneider and Avalon from answering questions related to “civil process, civil procedure or domestic violence issues ...,” some of which may not concern service of process. To the extent the injunction restricts Schneider and Avalon from answering questions related to civil process education and training, or civil procedure and domestic issues unrelated to service of process, it should be clarified. Cf. Advantage Digital Sys., Inc. v. Digital Imaging Servs., Inc., 870 So.2d 111, 115 (Fla. 2d DCA 2003) (“Because the noncom-petition agreements prohibit only solicitation, that is the only activity that can be the subject of an injunction based on the parties’ contracts.”).
Additionally, the restrictive covenant prohibits Avalon and Schneider from competing for and soliciting Keating’s clients. The court’s order is overly broad to the extent it enjoined Avalon and Schneider from competing for “any sheriffs in Florida” in the area of civil service consulting, irrespective of whether they were a client of Keating. The trial court should modify the injunction to allow Avalon and *84 Schneider to compete for the remaining sheriffs’ offices with which Keating shares no substantial relationship.
As to the bond amount, Avalon and Schneider acknowledge the trial court provided them an opportunity to address the appropriate bond amount, but claim the court “terminated that opportunity midstream.” Consequently, they argue the trial court failed to hold an evidentiary hearing as to the appropriate bond amount, and thus there was no basis for its decision.
Before setting the bond amount, a trial court must have some basis for the exercise of its discretion, which is typically the evidence provided to the court by the parties. AOT, Inc. v. Hampshire Mgmt. Co., 653 So.2d 476, 478 (Fla. 3d DCA 1995). The amount of the injunction bond should reflect the court’s determination of the foreseeable damages for a wrongful injunction. Lotenfoe v. Pahk, 747 So.2d 422, 425 (Fla. 2d DCA 1999) (citing Parker Tampa Two, Inc. v. Somerset Dev. Corp., 544 So.2d 1018, 1021 (Fla.1989)). If wrongfully enjoined, the party’s damages are generally limited to the bond amount posted. Id. “[T]he court may consider factors other than anticipated costs and damages in setting a bond, including the adverse party’s chances of overturning the temporary injunction.” Longshore Lakes Joint Venture v. Mundy, 616 So.2d 1047, 1047 (Fla. 2d DCA 1993).
While it appears little time was spent discussing the bond, Avalon’s and Schneider’s request for a bond was heard and supported by evidence. By basing their request for a $55,000 — plus bond on Keating’s lost profits, which was supported by the cancelled contracts admitted into evidence at the injunction hearing, Avalon and Schneider effectively argued that their damages would be the same if wrongfully enjoined. Moreover, no clear abuse of discretion has been shown solely by the fact the trial court set bond at $10,000 as opposed to a figure closer to the amount requested. See Montville v. Mobile Med. Indus., Inc., 855 So.2d 212, 216 (Fla. 4th DCA 2003).
In sum, we affirm the trial court’s order granting the temporary injunction and setting the bond. We remand with directions to the trial court to modify and narrow the terms of the injunction consistent with this Court’s opinion.
AFFIRMED; and REMANDED with directions.
PALMER and TORPY, JJ., concur.

. According to the parties, "civil service of process training and consulting” constitutes the practice of helping Florida's sheriffs’ office personnel better understand the requirements and procedures of nonenforceable process under chapter 48, Florida Statutes, and enforceable process under chapters 55 (judgments) and 56 (final process), Florida Statutes, as well as under the rules concerning replevins, injunctions, writs of execution, writs of attachment, levy sales, and foreign judgments. The service is offered in conjunction with the support already provided by the sheriff’s in-house counsel and is purportedly a niche market, wherein only Keating, Avalon and Schneider currently compete.

. As Schneider had filed for Chapter 7 bankruptcy protection, she was being sued in equity and not for damages.

. Specifically, the statute defines goodwill as that associated with:
a.An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress”;
b. A specific geographic location; or
c. A specific marketing or trade area.
§ 542.335(l)(b)4.a.-c„ Fla. Stat.

. Both sides claim the other has violated the ethics rules in providing the consulting services. We agree with the trial court that the alleged rule violations are best left for The Florida Bar to resolve.