LAWSON, J.
Planned Parenthood of Greater Orlando, Inc. (“Planned Parenthood”) appeals a nonfinal order granting a temporary injunction to MMB Properties (“MMB”), a cardiology practice, prohibiting Planned Parenthood from performing abortions or sonograms in violation of a restrictive covenant in the medical park where both parties own property.[1] The restriction at issue prohibits Planned Parenthood’s property from being used as an “Out Patient Surgical Center” or a “Diagnostic Imaging Center” “unless ancillary and incidental to a physician’s practice of medicine.” We reverse that part of the order temporarily enjoining Planned Parenthood from performing sonograms because that relief was not sought by MMB in its pleadings and was not, in our view, tried by consent. See Cortina v. Cortina, 98 So.2d 334, 337 (Fla.1957) (“It is fundamental that a judgment upon a matter entirely outside of the issues made by the pleadings cannot stand; and where, as here, an issue was not presented by the pleadings nor litigated by the parties during the hearing on the pleadings as made,' a decree adjudicating such issue is, at least, voidable on appeal.”); We’re Assoc. VI, Ltd. P’ship v. Curzon Dev. Corp., 738 So.2d 440, 441 (Fla. 4th DCA 1999) (noting that relief granted in injunction must be specifically requested). On remand, we also order the trial court to strike the vague language prohibiting Planned Parenthood from performing other unspecified procedures. See Fla. R. Civ. P. 1.610(c) (“Every injunction ... shall describe in reasonable detail the act or acts restrained without reference to a pleading or another document....”); Pizio v. Bab-cock, 76 So.2d 654, 655 (Fla.1954) (“In-junctive orders like this should be confined within reasonable limitations and cast in such terms as they can, with certainty, be complied with. The one against whom it is directed should not be left in doubt about what he is to do.”). We affirm that part of the order temporarily enjoining Planned Parenthood from performing abortions at the property, and write further to expressly address several points relating to our affirmance.
“Generally, a trial court is afforded ‘wide discretion to either grant, deny, dissolve, or modify a temporary injunction, and an appellate court will not intercede unless the aggrieved party clearly shows an abuse of discretion.’ ” Avalon Legal Info. Servs., Inc. v. Keating, 110 So.3d 75, 80 (Fla. 5th DCA 2013) (quoting Meyers v. *128 Club at Crystal Beach Club, Inc., 826 So.2d 1086, 1089 (Fla. 5th DCA 2002)). The trial court’s factual determinations must be accepted if supported by competent, substantial evidence. Charlotte Cnty. v. Vetter, 863 So.2d 465, 469 (Fla. 2d DCA 2004). However, when its rulings pertain to purely legal matters, review is de novo. Avalon Legal, 110 So.3d at 80 (citing Suggs v. Sw. Fla. Water Mgrnt. Dist., 953 So.2d 699, 699 (Fla. 5th DCA 2007)).
Four elements are generally required for a temporary injunction: (1) a substantial likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) the unavailability of an adequate remedy at law; and (4) that a temporary injunction will serve the public interest. DePuy Orthopaedics, Inc. v. Waxman, 95 So.3d 928, 938 (Fla. 1st DCA 2012). Before addressing Planned Parenthood’s challenges to the trial court’s findings on these elements, we will first discuss the evidence properly considered under our scope of review. We will address each of these elements after briefly discussing the evidence properly considered on appeal and our scope of review.
This court previously, by order, granted a stay of the injunction pending appeal, and expressly considered “the record as a whole, including the affidavits Planned Parenthood filed in support of its motion for rehearing.” (emphasis added).[2] MMB also notes that Planned Parenthood relies heavily on these affidavits to support its arguments for reversing the temporary injunction. However, we find that the affidavits filed in connection with the motion to reconsider should not be considered in our review of the injunction order for the basic reason that'they were not presented to the court until after issuance of the order and therefore could not have been considered by the court when it made its ruling. Additionally, although trial courts have inherent authority to reconsider non-final rulings, they are not required to do so — meaning that a trial court’s decision not to reconsider a nonfinal ruling is generally not reviewable. Hunter v. Dennies Contracting Co., 693 So.2d 615, 616 (Fla. 2d DCA 1997). Thus, to the extent that the affidavits were submitted in support of the motion to reconsider, the trial court’s decision not to revisit its original order is beyond this court’s scope of review. Finally, to the extent that the affidavits were submitted in support of Planned Parenthood’s motion to dissolve or modify the injunction, it needed to establish changed circumstances, id., which it did not do.[3] In its initial brief, Planned Parenthood does not challenge the denial of its motion to dissolve or- modify the injunction, much less argue that it established changed circumstances. Thus, while Planned Parenthood timely appealed the injunction order and can therefore challenge the sufficiency of the evidence presented at the injunction hearing, it cannot rely on evidence submitted after the injunction hearing in support of that challenge.
With respect to the “substantial likelihood of success” element, Planned Parenthood first argues that the trial court erred by enjoining it from performing abortions because the restriction at issue does not prohibit the activities of performing abortions; rather, it prevents the oper *129 ation of outpatient surgical centers. The restriction states:
The property described herein shall not be used for the following activities without the prior written permission [of the developer in its sole and unfettered discretion], unless ancillary and incidental to a physician’s practice of medicine:
1. An Outpatient Surgical Center.
2. An Emergency Medical Center.
3. A Diagnostic Imaging Center which includes the following radio-graphic testing: Fluroscopy [sic], Plane Film Radiography, Computerized Tomography (CT), Ultrasound, Radiation Therapy, Mamography [sic] and Breast Diagnostics, Nuclear Medicine Testing and Magnetic Resonance Imaging (MRI).
(Emphasis added). Interestingly, the trial court did not find that performing abortions would transform Planned Parenthood’s facility into an outpatient surgical center. Instead, it found that MMB had a substantial likelihood of success in proving that abortions are outpatient surgical procedures.[4], This distinction highlights a rather poorly worded restrictive covenant that prohibits the property from being “used” for the “following activities” but then lists three “centers ” as prohibited activities. In short, it uses names of locations where activities occur rather than naming the activities themselves. It does not define the terms “outpatient surgical center.”
Both parties argue that the term “outpatient surgical center” is clear and unambiguous, but offer differing definitions. MMB relies on a dictionary definition of “center” as “a facility providing a place for a particular activity or service.” Merriam-Webster Online Dictionary, http:// www.merriam-webster.com/dictionary/ center (last visited April 6, 2015). Thus, an “outpatient surgical center” would be a facility providing a place for performing outpatient surgical procedures. Planned Parenthood relies on the statutory definition of “ambulatory surgical center,” in section 395.002(3), Florida Statutes (2013), which is defined as follows:
(3) “Ambulatory surgical center” or “mobile surgical facility” means a facility the primary purpose of which is to provide elective surgical care, in which the patient is admitted to and discharged from such facility within the same working day and is not permitted to stay overnight, and which is not part of a hospital. However, a facility existing for the primary purpose of performing terminations of pregnancy, an office maintained by a physician for the practice of medicine, or an office maintained for the practice of dentistry shall not be construed to be an ambulatory surgical center, provided that any facility or office which is certified or seeks certification as a Medicare ambulatory surgical center shall be licensed as an ambulatory surgical center pursuant to s. 395.003. Any structure or vehicle in which a physician maintains an office and practices surgery, and which can appear to the public to be. a mobile office because the structure or vehicle operates at more than one address, shall be construed to be a mobile surgical facility.[5]
*130 Id. (emphasis added). Assuming that the terms “ambulatory” and “outpatient” are synonymous, this definition requires that the “primary purpose” of such a facility is to provide elective surgical care.
“Florida adheres to the general rule that a reasonable, unambiguous restriction will be enforced according to the intent of the parties as expressed by the clear and ordinary meaning of its terms.” Barrett v. Leiher, 355 So.2d 222, 225 (Fla. 2d DCA 1978). “If it is necessary to construe a somewhat ambiguous term, the intent of the parties as to the evil sought to be avoided expressed by the covenants as a whole will be determinative.” Id.; see also Killearn Homes Ass’n v. Visconti Family Ltd. P’ship, 21 So.3d 51, 53 (Fla. 1st DCA 2009) (“It was improper for the court to look to an outside source to determine the meaning of the word ‘building’ as used in the restriction, rather than first considering the language of the deed restriction as a whole.” (citations omitted)).
The restriction in question prohibits certain “activities,” namely outpatient surgical centers, emergency medical centers, and diagnostic imaging centers. Although it does not further specify the activities included in the first two categories, it does in the third category, stating that such activities included “the following radiographic testing,” with a list of specific imaging procedures. Thus, the focus of this restriction is on prohibited activities. In this light, the use of the word “center” does not necessarily suggest a quantitative requirement that such activities be the “primary purpose” of the location. Rather, it is merely a location where such activities occur.
In addition, the restriction provides an exception for such activities when they are “ancillary and incidental to a physician’s practice of medicine.” MMB is correct that adopting Planned Parenthood’s statutory definition would render this exception meaningless because if an outpatient surgical center is defined as a facility the primary purpose of which is to provide outpatient surgical procedures, then such procedures could not be “ancillary and incidental” to a physician’s practice of medicine. However, if it is merely a facility where outpatient surgical procedures are performed along with other procedures, then it would not prohibit abortions if they were ancillary and incidental to a physician’s practice of medicine. Thus, the exception strongly suggests that any outpatient surgical procedures beyond those that are “ancillary and incidental” to a physician’s medical practice are prohibited, even if the primary purpose of the location is not to provide outpatient surgical procedures.
We conclude that, while the restriction is rather poorly drafted, it is not unclear. It prohibits the property from being used as an outpatient surgical center, the common and ordinary meaning of which is a facility or place for, or for the purpose of, performing outpatient surgical procedures. Having construed, de novo, the restrictive covenant, we readily find that the trial court’s factual findings as to this issue are supported by competent, substantial evidence. The trial court’s findings were that abortions are outpatient surgical procedures; that Planned Parenthood’s facility is not a physician’s practice of medicine; and, that even if the facility is operated as a physician’s practice of medicine, its performance of abortions was not ancillary or incidental to that practice. Accepting these findings, we affirm the trial court’s ultimate finding that MMB had a substantial likelihood of success in proving that Planned Parenthood’s performance of *131 abortions at the facility would violate the restrictive covenant.
Next, Planned Parenthood argues that MMB failed to prove irreparable harm, which is normally required to obtain an injunction. However, MMB correctly argues that when injunctions enforce restrictive covenants on real property, irreparable harm is not required. See, e.g., Stephl v. Moore, 94 Fla. 313, 114 So. 455 (1927) (holding complainant not required to allege irreparable harm in seeking injunction to prevent violation of restrictive covenant restraining free use of land; complainant only needed to allege violation of covenant); Autozone Stores, Inc. v. Ne. Plaza Venture, LLC, 934 So.2d 670, 673 (Fla. 2d DCA 2006) (“Florida law has long recognized that injunctive relief is available to remedy the violation of a restrictive covenant without a showing that the violation has caused an irreparable injury — that is, an injury for which there is no adequate remedy at law.”); Jack Eckerd Corp. v. 17070. Collins Ave. Shopping Ctr., Ltd., 563 So.2d 103, 105 (Fla. 3d DCA 1990) (“Where an injunction is sought to prevent the violation of a restrictive covenant, appropriate allegations showing the violation are sufficient and it is not necessary to allege, or show, that the violation amounts to an irreparable injury.”); Coffman v. James, 177 So.2d 25, 31 (Fla. 1st DCA 1965) (“It is well established in this jurisdiction that even in the absence of a showing of irreparable [sic] injury injunctive relief is granta-ble as a matter of right, subject only to sound judicial discretion, to restrain the violation of a restrictive covenant affecting real estate.”).
Planned Parenthood argues that the trial court erred in relying on Autozone and in failing to follow a case that Autozone distinguished: Liza Danielle, Inc. v. Jamko, Inc., 408 So.2d 735 (Fla. 3d DCA 1982). In Liza Danielle, a shoe store leasing space in a shopping center had an exclusivity provision in its lease prohibiting the lessor from leasing any other space in the shopping center to another shoe store. When the lessor violated this provision, the first shoe store sued and obtained an injunction barring the second shoe store from operating. The appellate court reversed the injunction in part because of the availability of an adequate legal remedy and the failure to prove irreparable harm. However, as Autozone and Jack Eckerd both point out, Liza Danielle did not involve a restrictive covenant running with the land. It involved an exclusivity provision in a lease for which damages were available. Accordingly, Planned Parenthood’s reliance on it in this case is misplaced. MMB was not required to establish irreparable harm.
Moreover, the trial court properly rejected Planned Parenthood’s argument that it would suffer irreparable harm if the injunction were granted. As. the court correctly noted, Planned Parenthood was aware of the restrictions and proceeded forward at its own peril. See Daniel v. May, 143 So.2d 536, 538 (Fla. 2d DCA 1962) (noting that courts do not ordinarily consider amount of injury suffered if injunction granted except where violation of covenant is minute); ChicE-FiL-A, Inc. v. CFT Dev., LLC, 652 F.Supp.2d 1252, 1263 (M.D.Fla.2009) (noting that defendants were aware of restrictive covenant when they purchased property and thus, “[w]hatever hardship may accrue to Defendants by virtue of a permanent injunction could easily have been avoided”), ajfd, 370 FedAppx. 55 (11th Cir.2010). “Where a purchaser of land intends to use it for a purpose not allowed by a restrictive covenant, he should seek to have the deed restriction removed before purchasing the property.” Wood v. Dozier, 464 So.2d 1168,1170 (Fla.1985).
*132 Similarly, Planned Parenthood argues that no evidence supported the trial court’s finding that an injunction would serve the public interest “by limiting the sort of medical services that can be offered in facilities which are located directly across from a hospital.” Specifically, it argues that MMB failed to show that Planned Parenthood’s services would duplicate those provided by the hospital, and even if they did, it is not in the public interest to limit such services. However, testimony was elicited from one of the witnesses that the purpose of the restrictive covenants at issue was to protect the hospital from certain types of development and uses being conducted nearby, and the Wood ease, 464 So.2d at 1170, states that this purpose serves the public interest.
Both parties seek appellate attorneys’ fees under an attorneys’ fee provision in the 1988 Covenants. Neither party fully quotes that provision. It states:
These restrictions shall be construed as covenants running with the land and shall inure to the benefit of, be binding upon and enforceable by Declarant, the Association or any Owner. Enforcement shall he by proceedings at law or in equity against any person or persons violating or attempting to violate any covenants, either to restrain or prevent such violation or proposed violation by an injunction, either prohibitive or mandatory, or to obtain any other relief authorized by law. Such enforcement may be by the owner of any Lot or by Declarant or by the Association. If De-clarant, the Association or any owner shall seek to remedy a violation of these Restrictions through obtaining an order from a court of competent jurisdiction enabling it to enter upon the portion of the Lot upon or as to which such violation exists, and shall summarily abate or remove the same, then in such event the Owner committing such violation shall pay on demand the cost and expense of such abatement or removal, which shall include attorneys’ fees and other costs (including fees and costs upon appeal) in connection with seeking the court order, together with interest thereon at the highest rate allowed by law from date of disbursement to date to date of recovery ...
(Emphasis added).
“Contractual provisions concerning attorney’s fees are to be strictly construed.” Williams v. Williams, 892 So.2d 1154, 1155 (Fla. 3d DCA 2005) (citations omitted). The above provision does not authorize attorneys’ fees in this case. Although the first part of the provision permits enforcement by injunction, the attorneys’ fee provision is more narrowly worded. It authorizes fees for “obtaining an order from a court of competent jurisdiction enabling it to enter upon the portion of the Lot upon or as to which such violation exists, and shall summarily abate or remove the same.” The injunction in this case does not enable MMB to enter upon Planned Parenthood’s Property. As such, we find that neither party is entitled to attorneys’ fees.
AFFIRMED IN PART; REVERSED IN PART; REMANDED; ATTORNEYS’ FEES MOTIONS DENIED.
PALMER, J., concurs.
EVANDER, J., concurs in part, dissents in part with opinion.

. We have jurisdiction to review an order granting a temporary injunction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(B). Planned Parenthood also appeals an order denying its Motion to Reconsider, Dissolve, or Modify Order Granting Motion for Temporary Injunction. This motion was actually two motions. See Anesthesia Grp. of Miami, Inc. v. Hyams, 693 So.2d 673, 674 (Fla. 3d DCA 1997) (noting that motion to dissolve temporary injunction was, in part, a motion to reconsider). To the extent this second order simply denied a motion to reconsider a previous non-final order, it was not appealable. Agere Sys. Inc. v. All Am. Crating, Inc., 931 So.2d 244, 245 (Fla. 5th DCA 2006). To the extent the second order denied the motion to dissolve or modify the injunction, it was appealable under the above rule. None of Planned Parenthood’s appellate arguments, however, relate to the second order.

. Preliminary orders entered by an appellate court in the same appeal are not binding on the court, Clevens v. Omni Healthcare, Inc., 83 So.3d 1011, 1011 n. 1 (Fla. 5th DCA 2012); Hialeah Hotel, Inc. v. Woods, 778 So.2d 314, 315 (Fla. 3d DCA 2000).

. We acknowledge conflict with the Third and Fourth District Courts of Appeal, as noted in Minty v. Meister Financial Grp., Inc., 132 So.3d 373, 376 n. 4 (Fla. 4th DCA 2014).

. Although Planned Parenthood argued below that abortions were not surgical procedures, it has abandoned that argument on appeal. •There was also ample evidence to support the trial court's conclusion that a "surgical abortion” is a surgical procedure. Nor does Planned Parenthood challenge the trial court's finding that abortions are conducted on an outpatient basis.

. Planned Parenthood correctly notes that a substantially similar definition was in effect *130 when this restrictive covenant was executed in 1986. See § 395.002(2), Fla. Stat. (1986).